[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15188

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-01056-CV-RDP

PATRICIA FRAZIER,

Plaintiff-Appellant,

versus

CITIFINANCIAL CORPORATION, LLC,

Defendant-Appellee.

_____

No. 08-15709

_____

D. C. Docket No. 07-00271-CV-2-IPJ

JOHN FRAZIER,

Plaintiff,

PATRICIA FRAZIER,

Plaintiff-Appellant,

versus

CITIFINANCIAL CORPORATION LLC,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(April 30, 2010)

Before DUBINA, Chief Judge, BIRCH and SILER,[*] Circuit Judges.

BIRCH, Circuit Judge:

Patricia Frazier appeals from the district court's 11 September 2008 order confirming an arbitration award in favor of CitiFinancial Corporation, LLC ("CitiFinancial") and its 18 September 2008 order denying her motion to vacate the award.[1] Because none of the statutory bases for vacatur or modification of arbitration awards set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., applies in this case, and because the judicially-created grounds for vacatur we have recognized in our prior precedent are no longer valid after the Supreme Court's decision in Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396 (2008), we AFFIRM.

_____

[*] Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] We dismissed Mr. Frazier's appeal for want of prosecution on 19 March 2009.

2

## I. BACKGROUND

In April 2000, Frazier's husband, John Frazier, obtained a loan in the amount of $33,570 from HomeSense Financial Corporation of Alabama ("HomeSense"). Mr. Frazier signed a promissory note, a mortgage, and an arbitration agreement in connection with the loan transaction. Mrs. Frazier's signature also appears on the mortgage, although it was later determined by the arbitrator during the arbitration proceedings that her signature was forged by Mr. Frazier. The arbitration agreement provided, in pertinent part:

### ARBITRATION AGREEMENT

### READ THIS ARBITRATION AGREEMENT CAREFULLY, IT WILL HAVE A SUBSTANTIAL IMPACT ON YOUR LEGAL RIGHTS

In consideration of HomeSense Financial Corp. of Alabama's extension of credit, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by both parties, the parties, intending to be legally bound hereby, knowingly and voluntarily enter into this Arbitration Agreement ("Agreement"), which sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions.** As used solely in this Arbitration Agreement, the following definitions will apply:

**"You"** or **"Your"** mean any and all Borrower(s) who execute this Agreement, and their heirs, executors, predecessors, successors and assigns.

**"We"** or **"Us"** mean HomeSense Financial Corp. of Alabama[,] all of its parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, and assigns; and all of the agents, employees, directors and representatives of such entities. In addition, "we" or "us" mean any third party providing any product or service in connection with the Credit Transaction (including but not limited to investors or potential investors, real estate brokers, mortgage brokers, credit bureaus, appraisers, mortgage life insurance companies, private mortgage insurance companies, closing agents, escrow agents, title insurance companies, loan originators, rating agencies and loan servicers) or any assignee of the Credit Transaction if, and only if, such third party is named as a co-defendant with us in a Claim asserted by you.

**"Credit Transaction"** means the loan obligation identified by the above referenced Loan Number and any prior loan obligation which was originated, owned and/or serviced by us; the notes, mortgages, deeds of trust, deeds to secure debt, security agreements, applications, disclosures and other documents related to or evidencing said obligation(s); any modification, extension or forbearance of said obligation(s); any insurance, service or product offered or made available by us in connection with the Credit Transaction and any associated fees or charges; and any documents, instruments or advertising or promotional materials that contain information about the Credit Transaction or any associated insurance, service or product.

**"Claim"** means any claim, dispute or controversy between you and us (except for Excluded Claims, as defined below) arising from or relating to the Credit Transaction or the relationships resulting from the Credit Transaction, including the validity, enforceability or scope of this Arbitration Agreement, or the Credit Transaction. "Claim" includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims and third-party claims and claims based upon

contract, tort, fraud and other intentional torts, statute, common law and equity. The term "Claim" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises under or relates to the Truth in Lending Act and Regulation Z; the Equal Credit Opportunity Act and Regulation B; the Real Estate Settlement Procedures Act and Regulation X; state insurance, usury and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts; other federal or state consumer protection statues or regulations; any party's execution of the Agreement and/or willingness to be bound by the terms of this Agreement or any dispute about soliciting, originating, making, closing, servicing, collecting or enforcing the Credit Transaction.

**"Excluded Claims"** means (a) any action to effect a judicial or nonjudicial foreclosure or to establish a deficiency judgment; (b) any action arising out of unlawful detainer; (c) eviction or other summary proceeding to secure possession of real property securing the Credit Transaction; (d) any action to assert, collect, protect, realize upon or obtain possession of the collateral for the Credit Transaction in any bankruptcy proceeding; (e) any action to quiet title; (f) all rights of self-help including peaceful occupation of real property and collection of rents, set-off and peaceful possession of personal property; (g) obtaining a deed in lieu of foreclosure; and (h) obtaining provisional or ancillary remedies in connection with the foregoing.

    <u>**Resolution of Claims.**</u> Any Claim shall be resolved, upon the election of you or us, by binding arbitration pursuant to this Arbitration Agreement and the applicable rules of either the American Arbitration Association ("AAA"), J.A.M.S[.]/Endispute ("J.A.M.S.") or National Arbitration Forum ("NAF") in effect at the time the Claim is filed. You may select which of these arbitration administrators to use. The address, telephone number, web site and the applicable rules for each of these arbitration administrators is set forth at the end of this Agreement. If you fail to select an arbitration administrator within twenty (20) days

5

from the date you or we demand arbitration, we will choose one. The arbitrator (or in the case of an appeal to a panel of three arbitrators, as described below) shall be a lawyer with more than ten (10) years of experience or a retired judge.

. . . .

**Federal Arbitration Act and Appeals.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and, notwithstanding any choice of law clause which may be contained in any other documents which are part of the Credit Transaction, shall be government by the Federal Arbitration Act ("FAA") 9 U.S.C. Sections 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the award. In conducting the arbitration proceeding, the arbitrator shall not apply the Federal or any state rules of civil procedure or rules of evidence. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA and except that, if the amount in controversy exceeds $100,000, any party can appeal the award to a three-arbitrator panel administered by the same arbitration administrator which shall reconsider de novo any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal.

. . . .

**Important Additional Disclosures.** IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE RULES OF THE

ARBITRATION ADMINISTRATOR. FURTHERMORE, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION, EXCEPT AS SET FORTH ABOVE, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

**Acknowledgement.** **By signing below, you acknowledge that you understand and agree that if arbitration of any Claim is elected, you will be giving up your right to a court or jury trial and the right to be part of a class action, and that you give up those rights knowingly and voluntarily. You further understand and agree that other rights that you would have if you went to court will also not be available in arbitration. By signing below, you also acknowledge that you have read this Agreement carefully, that you are entering into it voluntarily and not in reliance on any promises or representations other than those contained in this Agreement itself and that you have had an opportunity to fully discuss and review the terms of this Arbitration Agreement with your attorney.**

Case No. 2:07-cv-00271, Doc. 47, Exh. 2.

In August 2002, HomeSense assigned its rights in the mortgage and home loan to Associates Financial Services Company of Alabama, Inc. ("Associates"). Associates subsequently assigned the loan between Mr. Frazier and HomeSense to CitiFinancial, its successor in interest. Mr. Frazier used a portion of the loan proceeds he received to pay on his credit card balances and other debts. Although he received over $17,000 in cash from the loan transaction, he did not tell Mrs.

7

Frazier about the loan, and had his mortgage statements sent to a post office box rather than to his and Mrs. Frazier's home address.

In November 2006, Mr. Frazier stopped making payments on the loan, claiming it was fraudulent. He and Mrs. Frazier filed a complaint against CitiFinancial in state court on 6 December 2006 asserting claims for breach of contract, fraud, and misrepresentation, and seeking rescission of the mortgage. Specifically, they alleged that CitiFinancial and its agents and/or assigns misrepresented that the loan was unsecured, that Mr. Frazier was unaware that the mortgage was secured by their home, and that the mortgage was executed under false pretense and in violation of state statutes.

CitiFinancial removed the case to federal court and filed a motion to compel arbitration of the Fraziers' claims. On 14 March 2007, the Fraziers amended their complaint to allege violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., claiming that CitiFinancial knew Mrs. Frazier's signature on the mortgage had been forged, yet reported the loan to credit agencies. Along with their amended complaint, the Fraziers filed a "Motion for Summary Judgment in Response to CitiFinancial Corporation, LLC's Motion to Compel Arbitration and Stay Proceedings and Memorandum in Support Thereof" asserting, inter alia, that

the mortgage was invalid under Alabama Code § 6-10-3,[1] thus entitling Mrs. Frazier to rescission of the mortgage, and that Mr. Frazier lacked capacity to execute the loan documents, including the arbitration agreement. The Fraziers argued additionally that Mrs. Frazier was not a third-party beneficiary of the loan transaction because she neither received nor benefitted from the proceeds from the loan, which "were spent under the sole discretion and authority of Mr. Frazier." Case No. 2:07-cv-00271, Doc. 12 at 2. The Fraziers amended their complaint once more on 2 June 2007 to assert a claim for slander to title.

On 15 June 2007, a magistrate judge issued a report recommending that CitiFinancial's motion to compel arbitration be granted. The magistrate judge first found that because Mr. Frazier formally signed the arbitration agreement as part of the loan transaction, there was "little question" that he agreed to arbitrate his claims. Case No. 2:07-cv-00271, Doc. 24 at 8. Mrs. Frazier's claims were also subject to arbitration, the magistrate judge found, because although she did not sign any of the transactional documents associated with the mortgage,[1] much less

---

[1] Alabama Code § 6-10-3 (2005) provides that "[n]o mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife."

[1] The magistrate judge noted that although Mrs. Frazier's signature purports to appear on the mortgage, she had submitted an affidavit, unchallenged by Mr. Frazier, stating that the signature was not hers, but was forged without her permission by Mr. Frazier. Mrs. Frazier's signature does not appear on any of the other loan transaction documents.

the arbitration agreement, her claims were inseparable from Mr. Frazier's, and her interest in the home was encumbered by the mortgage Mr. Frazier executed.

U.S. District Judge Inge Prytz Johnson adopted the report and recommendation on 6 November 2007, noting, inter alia, that because Mrs. Frazier benefitted from the loan proceeds and her claims arose directly out of the loan transaction, it would be "plainly inequitable" to allow her to disavow the terms of the transaction, including the arbitration agreement. Case No. 2:07-cv-00271, Doc. 37 at 3. Judge Johnson dismissed the Fraziers' complaint with prejudice, ordered the case to arbitration, and denied the Fraziers' subsequent motion to reconsider. The Fraziers did not timely appeal.

On 9 May 2008, Mrs. Frazier, proceeding alone, filed an action to quiet title in Alabama state court. In her complaint, she also sought a declaratory judgment that CitiFinancial's lien against the Fraziers' home was invalid, an injunction prohibiting CitiFinancial from foreclosing on the lien, and damages for slander to title. CitiFinancial removed the case to federal court, seeking to dismiss her quiet title action and to compel to arbitration her declaratory judgment, injunctive relief, and slander to title claims. On 13 August 2008, U.S. District Judge R. David Proctor dismissed without prejudice Mrs. Frazier's quiet title action, finding that it

was barred under Alabama Code § 6-6-560[2] because the pending arbitration proceeding was an "action" that tested her title to the subject property. In so concluding, Judge Proctor reasoned that the Alabama Supreme Court's determination in <u>Lee L. Saad Constr. Co., Inc. v. DFP Architects, P.C.</u>, 851 So. 2d 507, 516 (Ala. 2002), that arbitration proceedings and judicial actions stand on equal footing for purposes of res judicata and collateral estoppel, "leads inexorably to the conclusion that an arbitration proceeding would be considered an 'action' for purposes of the quiet title statute. To treat arbitration proceedings otherwise would not give them the same effect as Alabama courts do." R1-12 at 4-5. Judge Proctor then found that Mrs. Frazier's declaratory judgment and slander to title claims were subject to arbitration for the reasons set forth in Judge

---

[2] Ala. Code § 6-6-560 provides:

> When any person, natural or artificial, claims, either in his own right or in any representative capacity whatsoever, to own any lands or any interest therein, and is in the actual, peaceable possession of the land, . . . and has held, color of title to the lands, or interest so claimed, for a period of 10 or more consecutive years next preceding and has paid taxes on the lands or interest during the whole of such period, . . . he may, *if no action is pending to test his title to, interest in or his right to the possession of such lands*, file a verified complaint in the circuit court of the county in which such lands lie against said lands and any and all persons claiming, or reputed to claim, any title to, interest in, lien, or encumbrance on said lands, or any part thereof, to establish the right or title to such lands or interest and to clear up all doubts or disputes concerning the same.

Ala. Code § 6-6-560 (2009) (emphasis added).

11

Johnson's 6 November 2007 opinion and ordered them to arbitration. Mrs. Frazier timely appealed.

After a two-day hearing, the arbitrator issued a decision and award finding that Mrs. Frazier's signature on the mortgage had been forged, but that Mr. Frazier voluntarily entered into the secured loan transaction and therefore owed all sums specified in the note.[3] The arbitrator further found that the Fraziers' TILA, fraud, slander to title, and rescission claims were unavailing because the Fraziers failed to prove by a preponderance of the evidence that HomeSense, or the lawyer who conducted the closing, were agents or associates of CitiFinancial. Insofar as the evidence showed that Associates and CitiFinancial underwrote the loan and had no right to control the activities of HomeSense or its agents, CitiFinancial could not be vicariously liable for any misconduct by HomeSense or the lawyer who performed the closing. With respect to Mrs. Frazier's TILA claim based on CitiFinancial's having reported to credit agencies that the mortgage was in arrears, the arbitrator found that there was no evidence that CitiFinancial had any actual or constructive knowledge that Mrs. Frazier was not in fact responsible for the mortgage as it was not until the case went into arbitration that CitiFinancial

---

[3] In making this determination, the arbitrator noted that Mr. Frazier was shown the mortgage in a June 2001 meeting and thus knew it was secured by his and Mrs. Frazier's home.

learned that Mrs. Frazier's signature on the mortgage had been forged. Prior to the arbitration, CitiFinancial did not know and had no reason to know of the forgery since all of the loan documents in its possession appeared to have been properly notarized and authenticated. Mrs. Frazier's slander to title claim likewise failed because CitiFinancial's lack of knowledge that her signature had been forged precluded her from proving the malice necessary to prevail on such a claim. Finally, the arbitrator found that Mrs. Frazier had no right to rescission of the mortgage because there was no evidence she intended to repay CitiFinancial for the loan proceeds received by her husband.

The arbitrator then awarded CitiFinancial $38,706.93 in damages for breach of the promissory note, $9,250.19 in attorneys' fees, and an equitable lien against the Fraziers' home in the amount of $47,957.12. The arbitrator expressly stated, however, that he "ha[d] no authority to allow Citi[F]inancial to proceed to foreclose on the Frazier property" and that such relief must instead be obtained in a separate action for judicial or non-judicial foreclosure. Case No. 2:07-cv-00271, Doc. 47, Exh. 1 at 5. The arbitrator further noted that, despite CitiFinancial's equitable lien, Mrs. Frazier was entitled to retain her homestead exemption under Ala. Code § 6-10-3, which prohibits conveyance of a homestead by a married person without the voluntary signature and consent of the other spouse.

13

The district court confirmed the arbitration award on 11 September 2008, finding first that the Fraziers had no right to a <u>de novo</u> appeal to a three-arbitrator panel because, under the terms of the arbitration agreement, the right to appeal was available only where the amount in controversy exceeded $100,000.  Since the amount of the award was only $47,957.12, the appeal provision was not triggered.  The district court further found that the Fraziers had raised no grounds justifying vacatur and/or modification of the arbitration award under the FAA, 9 U.S.C. §§ 10-11.[4]

_____

[4] 9 U.S.C. § 10(a) (2009) provides that the district court may, upon application of any party to the arbitration, issue an order vacating the arbitrator's award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 11 (2009) provides that the district court may, upon application of any party to the arbitration, issue an order modifying or correcting the arbitrator's award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

14

The Fraziers moved the court to reconsider and/or to vacate, modify, or correct the award, arguing that: (1) the award was subject to vacatur under § 10(a)(4) because the arbitrator exceeded his authority in granting CitiFinancial an equitable lien because CitiFinancial did not request such relief; (2) the award was subject to modification and/or correction under § 11(b) because in granting CitiFinancial an equitable lien, the arbitrator decided a matter not submitted to him; (3) the award was subject to modification and/or correction under § 11(c) because the arbitrator's decision, insofar as it granted CitiFinancial an equitable lien while simultaneously finding that Mrs. Frazier was entitled to retain her homestead exemption, was "subject to multiple interpretations" and thus "imperfect"; (4) the award was arbitrary and capricious, against public policy, and made in manifest disregard for the law; (5) the Fraziers were entitled to a de novo appeal before a three-arbitrator panel; and (6) Mrs. Frazier was not bound by the arbitration agreement and could not be compelled to arbitrate her claims. Case

---

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

15

No. 2:07-cv-00271, Doc. 50 at 2.

The district court denied the Fraziers' motion on 18 September 2008. The court first found that the award was not subject to vacatur under § 10(a)(4) because, contrary to the Fraziers' assertion, CitiFinancial expressly asked that an equitable lien be granted in its favor in its pre-hearing brief, and such relief was permitted by Alabama law. Sections 11(b) and (c) were also inapplicable, the court found, because CitiFinancial did submit its request for an equitable lien to the arbitrator and because the correction the Fraziers were seeking, to wit, nullification of the equitable lien, would directly affect the merits of the dispute in this case. With respect to the non-statutory bases for vacatur upon which the Fraziers relied, the district court found that the award was not arbitrary and capricious, against public policy, or made in manifest disregard for the law because nothing in the record indicated that the arbitrator was aware of, but consciously and deliberately disregarded, applicable law in fashioning his award. Having previously determined that the Fraziers had no right to a de novo appeal, and that Mrs. Frazier was bound by the arbitration agreement, the court found meritless the Fraziers' remaining arguments.

Mr. and Mrs. Frazier filed separate notices of appeal from the district court's 11 and 18 September 2008 orders confirming the arbitration award and

16

denying their motion to vacate and/or modify the award, respectively. We consolidated the appeals on 29 December 2008, but subsequently dismissed Mr. Frazier's appeal for want of prosecution.

## II. DISCUSSION

On appeal, Mrs. Frazier contends that the district court erred in confirming the arbitrator's award and denying her motion to vacate the award because: (1) in granting CitiFinancial an equitable lien, the arbitrator exceeded his authority under § 10(a)(4), decided a matter not submitted to him under § 11(b), and issued an imperfect award under § 11(c); (2) the arbitrator exceeded his authority in deciding matters related to foreclosure and possession of the home that were not submitted to arbitration; (3) the award failed to address Mrs. Frazier's TILA and rescission claims, rendering it arbitrary and capricious; and (4) the arbitrator's decision was contrary to public policy and made in manifest disregard of the law. Mrs. Frazier further argues that the district court improperly calculated the amount in controversy for purposes of determining that she was not entitled to an appeal, erroneously enforced the arbitration award against her, and erred in dismissing her action to quiet title.

As an initial matter, and for the reasons set forth in Judge Johnson's 6 November 2007 and 11 September 2008 orders, we find meritless Mrs. Frazier's

17

claims that she was not bound by the arbitration agreement and was entitled to appeal the arbitrator's award to a three-arbitrator panel, respectively. We likewise discern no error in Judge Proctor's 13 August 2008 memorandum opinion concluding as a matter of law that Mrs. Frazier's action to quiet title was barred under Ala. Code § 6-6-560.

We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions de novo. See Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1324 (11th Cir. 2005); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221 (11th Cir. 2000).

Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute. 9 U.S.C. § 9. As described *supra*, section 10 permits vacatur of arbitration awards only in four narrow circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any

18

other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).   Under section 11, arbitration awards may be corrected and/or modified in three situations, only two of which are alleged to exist in this case: "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted," and "[w]here the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11(b), (c).  There is a presumption under the FAA that arbitration awards will be confirmed, and "federal courts should defer to an arbitrator's decision whenever possible.  B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir. 2006)

We think it clear that none of the statutory bases for vacating an arbitrator's award under the FAA applies in this case.  Contrary to Mrs. Frazier's assertions, the arbitrator did not exceed his authority or award upon a matter not submitted to him in granting CitiFinancial an equitable lien against the subject property.  As the district court found and the record substantiates, CitiFinancial expressly requested such relief in its pre-hearing submissions to the arbitrator.  Given the arbitrator's explicit statement that he had no authority to authorize foreclosure and that

19

CitiFinancial must obtain such relief in a separate action for judicial or non-judicial foreclosure, Mrs. Frazier's contention that the arbitrator exceeded his powers in awarding CitiFinancial a right to foreclose is likewise without merit. Finally, we agree with the district court that § 11(c) is plainly inapplicable, as the arbitrator's grant of an equitable lien, even assuming it was error, did not render the award "imperfect in matter of form *not affecting the merits of the controversy*." 9 U.S.C. § 11(c) (emphasis added).

Having determined that the award was not subject to vacatur and/or modification under sections 10 or 11, we turn to Mrs. Frazier's additional arguments that the award was arbitrary and capricious, in violation of public policy, and made in manifest disregard for the law. Although our prior precedents have recognized these three non-statutory grounds for vacatur, see B.L. Harbert Int'l, 441 F.3d at 910,[5] Hall Street casts serious doubt on their legitimacy.

---

[5] "[T]he arbitrary and capricious ground permits courts to vacate arbitration awards . . . . when the award exhibits a wholesale departure from the law" or "when the award is not grounded in the contract which provides for the arbitration." Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 781 (11th Cir. 1993). The public policy exception permits district courts to "refuse to enforce arbitration awards where enforcement would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. at 782 (quotation marks and citation omitted). Finally, the "manifest disregard of the law" ground permits district courts to vacate an award where there is "clear evidence that the arbitrator was conscious of the law and deliberately ignored it." B.L. Harbert Int'l, LLC, 441 F.3d at 910 (quotation marks, alteration, and citation omitted).

20

In Hall Street, the parties executed an agreement to arbitrate in which they also agreed that the district court could vacate any award if the arbitrator's factual findings lacked evidentiary support or if the arbitrator's legal conclusions were erroneous.  See 552 U.S. at 579, 128 S. Ct. at 1400-01.  The precise issue before the Court was whether the statutory bases for vacatur of an arbitrator's award set forth in § 10 may be supplemented by *contract*.  Id. at 578, 128 S. Ct. at 1400.  Answering this question in the negative, the Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification," reasoning that the provision for judicial confirmation of an arbitrator's award contained in § 9

> carries no hint of flexibility.  On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'  There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.

Id. at 584, 587, 128 S. Ct. at 1403, 1405.  Read together, sections 9-11 "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."  Id. at 588, 128 S. Ct. at 1405.  Expanding the statutory grounds would, the Court warned, "open[] the door to the full-bore legal and evidentiary

appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." Id. (quotation marks, alteration, and citation omitted).[6]

Although the Court does not explicitly extend its holding in Hall Street to judicial expansions of §§ 10 and 11, at least some circuits have read Hall Street as prohibiting all extra-statutory grounds for vacatur, whether judicially-created or contractually agreed-upon. For example, the Fifth Circuit, relying on Hall Street's "unequivocal[]" holding that the statutory grounds listed in section 10 are the exclusive means for vacatur, has held that "manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA."

---

[6] In concluding that the statutory grounds for vacatur under the FAA are exclusive, the Court rejected Hall Street's contention that Wilko v. Swan, 346 U.S. 427, 74 S. Ct. 182 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917 (1989), had recognized "manifest disregard of the law" as an independent, judicially-created ground for vacatur beyond those enumerated in § 10. Hall Street, 552 U.S. at 584-85, 128 S. Ct. at 1403-04. In Wilko, the Supreme Court stated that "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436-37, 74 S. Ct. at 187-88. The Hall Street court acknowledged that some circuits had interpreted this language as recognizing "manifest disregard of the law" as an additional ground for vacatur, but, noting the "vagueness of Wilko's phrasing," suggested that this was too broad a reading of Wilko:

> Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. . . . Or, as some courts have thought, 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'

Id. at 585, 128 S. Ct. at 1404. In rejecting Hall Street's reading of Wilko, the Court appears to express disapproval of both contractual and judicial expansions of section 10.

Citigroup Global Markets Inc. v. Bacon, 562 F.3d 349, 350, 355 (5th Cir. 2009). The court reasoned that "[i]n the light of Hall Street's repeated statements that 'We *hold* that the statutory grounds are exclusive,'" it could not be interpreted as applying only to contractual expansions of §§ 10 and 11. Id. at 356. See also Ramos-Santiago v. United Parcel Service, 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in [Hall Street] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA].").

The Second and Ninth Circuits have taken a different approach, treating manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead as a judicial interpretation of the district court's power under § 10(a)(4) to vacate an award where the arbitrator "exceeded [his] powers" or "so imperfectly executed them that a mutual, final, and definite award . . . was not made." 9 U.S.C. § 10(a)(4). See Comedy Club, Inc. v. Improv West Assoc., 553 F.3d 1277, 1290 (9th Cir.), cert. denied, Improv West Assoc. v. Comedy Club, Inc., ___ U.S. ___, 130 S. Ct. 145 (2009) (concluding that "after Hall Street Associates, manifest disregard of the law remains a valid ground for vacatur" because it is "shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4)"); Stolt-Nielsen v. AnimalFeeds Int'l Corp., 548

23

F.3d 85, 94 (2d Cir. 2008), <u>cert.</u> <u>granted</u>, <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l</u> <u>Corp.</u>, ___ U.S. ___, 129 S. Ct. 2793 (2009) (holding that "'manifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA, remains a valid ground for vacating arbitration awards").

Finally, the Sixth Circuit has concluded in an unpublished opinion that while <u>Hall Street</u> "significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, . . . it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law" because it held only that the FAA prohibits private parties from supplementing by contract the FAA's statutory grounds for vacatur, without expressly addressing whether those grounds may be supplemented judicially. <u>Coffee Beanery, Ltd. v. WW, L.L.C.</u>, 300 Fed. Appx. 415, 418-19 (6th Cir. 2008), <u>cert.</u> <u>denied</u>, <u>Coffee Beanery, Ltd. v. WW, LLC</u>, ___ U.S. ___, 130 S. Ct. 81 (2009).[7]

_____

[7] In <u>AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.</u>, 579 F.3d 1268, 1271 (11th Cir. 2009), we stated in dicta that <u>Hall Street</u> "confirmed [that] sections 10 and 11 of the FAA offer the exclusive grounds for expedited vacatur or modification of an award under the statute," but had no occasion to decide whether our judicially-created grounds for vacating arbitration awards survive in the wake of <u>Hall Street</u>. In <u>AIG Baker Sterling Heights</u>, we addressed whether the district court violated the FAA when, for a reason not set forth in §§ 10 or 11, it granted American relief under Federal Rule of Civil Procedure 60(b)(5) from its judgment confirming an arbitration award. <u>Id.</u> at 1270. We observed that while §§ 10 and 11 "severely limit[] judicial vacatur and modification of an arbitration award," these sections did not control the circumstances of the appeal because the district court neither vacated nor modified the

24

We hold that our judicially-created bases for vacatur are no longer valid in light of <u>Hall Street</u>. In so holding, we agree with the Fifth Circuit that the categorical language of <u>Hall Street</u> compels such a conclusion. See <u>Hall Street</u>, 552 U.S. at 586, 128 S. Ct. at 1404 ("the text compels a reading of the §§ 10 and 11 categories as exclusive"); <u>id.</u> at 589, 128 S. Ct. at 1406 ("the statutory text gives us no business to expand the statutory grounds"); <u>id.</u> at 590, 128 S. Ct. at 1406 ("§§ 10 and 11 provide exclusive regimes for the review provided by the statute"). As Mrs. Frazier has failed to demonstrate the existence of any of the statutory grounds for vacating or modifying the arbitrator's award, the district court was bound by § 9 to confirm the award.

### III. CONCLUSION

Frazier appeals the district court's orders confirming the arbitration award in favor of CitiFinancial and denying her motion to vacate or modify the award. For the foregoing reasons, we AFFIRM.

**AFFIRMED.**

---

arbitration award but, rather, entered a judgment confirming the award and then subsequently granted relief from that judgment under Rule 60(b)(5). <u>Id.</u> at 1271. We then held that § 13 of the FAA, which treats a judgment confirming an arbitration award just like any other federal civil judgment, permitted the district court to grant relief under Rule 60(b)(5). <u>Id.</u> at 1273-74.

25