[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14532

_____

D.C. Docket No. 3:07-cv-00752-HLA-JRK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 17, 2011
JOHN LEY
CLERK

WHITE SPRINGS AGRICULTURAL CHEMICALS, INC.,
d.b.a. PCS Phosphate-White Springs,

                                                            Plaintiff - Appellant,

versus

GLAWSON INVESTMENTS CORP.,
individually and as successor to Bienville
Forest Investments, Inc.,

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 17, 2011)

Before MARCUS, WILSON, and HILL, Circuit Judges.

WILSON, Circuit Judge:

White Springs Agricultural Chemicals, Inc. (White Springs) appeals the district court's confirmation of an arbitration award in favor of Glawson Investments Corp. (Glawson). White Springs challenges the grant of attorneys' fees, expert fees, and prejudgment interest and seeks to vacate or modify the arbitration award under the Federal Arbitration Act (FAA). We conclude that the district court properly confirmed the award of fees and interest.

Although this case has ultimately become a challenge to the appropriateness of an arbitration panel's award, it stems from a property dispute between the parties. White Springs operates phosphate mining, production, and processing facilities in Hamilton County, Florida. Some of its mining activities take place beneath land owned by Glawson, which conducts hunting, fishing, and recreational activities on the surface. Years before this particular dispute arose, the parties entered into an Operating Agreement and a Settlement Agreement to resolve prior litigation and harmonize their business operations. Each agreement contained an identical clause requiring arbitration of future legal claims.

When the property dispute underlying this appeal arose, Glawson filed a demand for arbitration with the American Arbitration Association (AAA). In its amended demand, served on White Springs on March 9, 2007, Glawson requested "an award of compensatory damages, together with costs of [the] action," as well

2

as the "amount and procedure determining the parties['] ad valorem tax obligations." White Springs initially sought to enjoin the arbitration in federal district court. When that claim was denied, the parties proceeded to arbitrate their disputes.

Glawson and White Springs stipulated that the arbitration would be divided into two parts. During the first part (Phase I), the arbitration panel would decide nonmonetary claims of injunctive and declaratory relief. The second part (Phase II) was reserved for determining "all other disputes of the parties, claims and counterclaims, as amended, including damages."

On August 18, 2008, the panel ruled in Glawson's favor on the Phase I claims, enjoining White Springs from discharging industrial water that disrupted Glawson's business operations. The panel further provided that "[a]ll claims not heard during [Phase I] are preserved as per the parties' stipulation." On September 29, 2008, the district court partially confirmed the Phase I award, recommitting any issues of compliance with the award back to the arbitration panel.

In preparation for Phase II, the parties filed various motions with the arbitration panel. Glawson and White Springs jointly submitted a list of proposed issues to be heard during Phase II, and each party individually submitted issues it

3

wanted resolved but to which the other party would not consent.  On December 5,
2008, Glawson moved to amend its original demand for arbitration to add issues it
individually submitted to the panel.  On December 24, Glawson filed a
supplemental motion seeking to clarify that, through its December 5 motion, it
sought "attorneys['] fees as part of its damages in the Phase II proceedings,"
including "attorneys' fees associated with related administrative proceedings" and
"an award of prevailing party attorneys' fees."  Glawson based an award of
attorneys' fees on the arbitration clause of the Operating Agreement and
Settlement Agreement, which provides:

> Any dispute or claim . . . shall be settled by binding arbitration
> in accordance with the Commercial Arbitration Rules of the
> American Arbitration Association ("AAA") . . . .  The arbitrators shall
> determine the rights and obligations of the parties according to the
> substantive laws of the State of Florida, excluding conflict of law
> principles, and shall give effect to the contract terms and applicable
> statutes of limitation. . . . *The arbitrators* may make final, interim,
> interlocutory, and partial awards, and *may grant any remedy or relief*
> *which they deem just and equitable and within the scope of the*
> *agreement of the parties,* excluding punitive damages but *including*
> *by way of example* specific performance, declaratory decrees and *the*
> *awarding of attorneys fees and costs*.

(emphasis added).

White Springs filed briefs in opposition to the possible award, and the panel
held argument on the Phase II–related motions, which included the claim for

attorneys' fees.[1]  On February 24, 2009, the panel decided these motions.  It explicitly deferred ruling on the issue of attorneys' fees until the conclusion of the arbitration but permitted the parties "to offer evidence of attorney fees, professional expenses and costs as damage elements to an existing claim."

The panel then heard the Phase II claims, and on September 8, 2009, it entered a final arbitration award.  The panel determined that Glawson was entitled to attorneys' fees for Phase I, expert costs associated with Phase I, and ad valorem taxes—including prejudgment interest on the principal amount—paid on certain lands.  The panel ruled that the district court would determine the amount of the attorneys' and expert fees.

White Springs then moved to vacate or modify the arbitration award, asserting that the grant of attorneys' fees, expert fees, and prejudgment interest on the ad valorem taxes was improper.  On Glawson's motion, the district court confirmed the award and denied White Springs's motion to vacate or modify.

---

[1]Although White Springs maintains that it had the opportunity to brief but not argue the issue, the arbitration panel's ruling on the Phase II motions stated that it was decided "[a]fter notice and argument," and the district court below noted that "the [arbitration panel] held a hearing on this issue [of attorneys' fees] before finding that Glawson was entitled to fees for a portion of the arbitration."  Based on the record, we cannot say that the district court's factual conclusion was clear error. *See Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).

White Springs now appeals the district court's confirmation of the award in favor of Glawson.

## I.  STANDARD OF REVIEW

We review the district court's confirmation of an arbitration award and its denial of a motion to vacate or modify the award *de novo*.  *Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).  We review its factual findings for clear error.  *Id.*

## II.  DISCUSSION

Sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, provide the exclusive means by which a federal court may upset an arbitration panel's award.  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S. Ct. 1396, 1404–05 (2008); *Frazier*, 604 F.3d at 1323–24.  Section 10 empowers the court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  Section 11 allows for modification of an award "[w]here the arbitrators have awarded upon a matter not submitted to them."  *Id.* § 11(b).  Because these Sections are the exclusive means for upsetting an arbitration award, a panel's incorrect legal conclusion is not grounds for vacating or modifying the award.  *See Frazier*, 604 F.3d at 1323–24 (finding that

judicially created grounds for vacating an arbitration award did not survive the Supreme Court's *Hall Street* decision); *see also Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) ("[M]anifest disregard of the law as an independent, nonstatutory ground for setting aside an [arbitration] award must be abandoned and rejected.").

### A.

White Springs contests the panel's award of attorneys' fees. First, it contends that the award must be vacated because it exceeded the powers of the arbitration panel. Because "arbitrators derive their powers from the parties' agreement," we look to the terms of the governing arbitration clause to determine the powers of the arbitration panel. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011). Here, the governing clause broadly provides: "The arbitrators . . . may grant *any remedy or relief* which they deem just and equitable and within the scope of the agreement of the parties, . . . including by way of example . . . *the awarding of attorneys['] fees and costs*." (emphasis added).

The Supreme Court recently stated, in the context of vacating an arbitration award under § 10(a)(4), that "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen*

7

*S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. ___, 130 S. Ct. 1758, 1767 (2010) (second and third alterations in original) (quotation marks and citation omitted). Looking at the language of the arbitration clause, it is difficult to understand how the panel could effectively "dispense[] [its] own brand of industrial justice" by granting Glawson an award that the arbitration clause itself uses as an example. White Springs cannot overcome the "high hurdle" necessary for vacating an arbitration award when there is a plain basis for the panel's award in the parties' agreement. *See id.*; *Frazier*, 604 F.3d at 1321 ("There is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006))). The arbitration panel thus had the power to award attorneys' fees. To the extent White Springs contests the panel's interpretation of Florida law, the FAA does not empower us to review these allegations of legal error. *See Frazier*, 604 F.3d at 1323–24.

White Springs next avers that the issue of attorneys' fees was not properly submitted to the panel and that, as a result, the award must be modified to exclude them. Unarguably, Glawson presented the arbitration panel with the issue of attorneys' fees with its December 24, 2008 motion. The issue lies in whether this motion effectively submitted that claim to the panel.

8

Upon review of the record, we conclude that the issue of attorneys' fees was submitted to arbitration. First, it is evident from the final award that the arbitration panel "plainly believed" the issue was submitted for their decision. *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1321–22 (5th Cir. 1994) (noting that the arbitrator's plain belief of submission is relevant to determine whether it has indeed been submitted). More importantly, the panel received briefing and allowed argument on the issue of attorneys' fees that established White Springs's legal position. White Springs was thus able to—and did—contest the submission of that issue to the panel before the final award. And even though the panel initially deferred ruling on the issue of fees, it ultimately decided the issue at the conclusion of Phase II (notably, after inviting the parties to present evidence of those fees as *damage elements to an existing claim*).

The timing of Glawson's request for attorneys' fees is also not determinative of proper submission here. Although it is true that Glawson did not demand attorneys' fees in its initial complaint, the panel could still consider fees once the issue was raised. Rule 6 of the AAA Commercial Arbitration Rules, which governed the arbitration here, allows a party to submit new or different claims with consent of the arbitrator. *See* American Arbitration Association, *Commercial Arbitration Rules*, www.adr.org/sp.asp?id=22440 (last visited Sept.

9

29, 2011).  Although the panel never explicitly ruled that the claim could proceed, it did grant the relief sought therein—a strong indication that the panel indeed consented to that claim.  As a result, the timing of Glawson's request does not preclude attorneys' fees from being considered a properly submitted claim.

White Springs also argues that the division into Phases I and II required that any claim for Phase I attorneys' fees be made during Phase I.[2]  We find this distinction artificial.  The parties stipulated that "*all* other disputes" would be resolved during Phase II.  (emphasis added).  The proceeding was intended as one arbitration broken into two parts, where all unresolved issues from Phase I were reserved for Phase II.  No authority supports the position—and White Springs points to none to illustrate—that a bifurcated arbitration proceeding deferring all unheard issues fails to preserve a claim for attorneys' fees arising from the first proceeding.  The arbitration was continuous, and the parties' agreement to conduct the arbitration in two distinct phases did not restrict the rights of either party to assert monetary claims in Phase II.

---

[2]White Springs also argues that Glawson is not entitled to fees because Glawson failed to move for those fees within fourteen days of confirmation of the Phase I award.  *See* Fed. R. Civ. P. 54(d)(2).  The Federal Rules of Civil Procedure, however, did not govern the award at issue here.  The issue of attorneys' fees was a substantive claim made pursuant to the parties' arbitration agreement and not relief sought after judgment of the district court.  To the extent that White Springs also bases its challenge to the panel's award of expert fees on Rule 54 and the related federal statutes, the same reasoning applies and federal law does not control.

10

Finally, White Springs relies on this court's ruling in *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186 (11th Cir. 1995), for the proposition that a general demand for "costs" does not properly submit the issue of attorneys' fees to an arbitration panel. *See id.* at 1195. While this may be true, we are unable to disregard crucial facts of this case that render *Davis* inapposite. Here, Glawson specifically identified in its December 24, 2008 motion that it sought attorneys' fees. Moreover, the arbitration panel received briefing on the permissibility of attorneys' fees; heard argument on pending Phase II motions, one of which was the claim for attorneys' fees; and issued a ruling on February 24, 2009 permitting the parties "to offer evidence of attorney fees, professional expenses and costs as damage elements to an existing claim." Unlike *Davis*, the parties here engaged the panel on the issue of attorneys' fees through briefing and argument. *See id.* (noting that the arbitration demand "ma[de] no request for attorneys' fees" and that "neither party presented evidence or argument on the issue"). *Davis* therefore does not control the outcome here, where the issue of attorneys' fees was presented and argued to the arbitration panel.

## B.

White Springs also appeals the arbitration panel's award of expert fees and prejudgment interest on ad valorem taxes. It contends that the award of expert

fees exceeded the panel's powers because federal law, which would prohibit full recovery of expert fees here, controls all procedural issues in federal court. Similarly, it argues that the panel exceeded its powers to award prejudgment interest because Florida law prohibits that recovery. These points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law. We cannot, however, review the panel's award for underlying legal error. *See Hall St.*, 552 U.S. at 586, 128 S. Ct. at 1404–05; *Frazier*, 604 F.3d at 1323–24. Even though White Springs presents its argument in terms of the FAA, it asks us to do what we may not—look to the legal merits of the underlying award.

## III.    CONCLUSION

We find that the arbitration panel had the power to decide Glawson's claim for attorneys' fees and that Glawson properly submitted the issue to the panel. We are unable to grant White Springs's request that we review the legality of the award of expert fees and prejudgment interest on the ad valorem taxes, as the FAA does not permit us to do so. We therefore find no basis to overturn any portion of the panel's final arbitration award.

**AFFIRMED.**

12