[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11478
Non-Argument Calendar
_____

D.C. Docket Nos. 4:17-cv-00117-LGW-CLR,
4:14-cv-00278-LGW-GRS

WILLIAM A. ANDERSON,

Plaintiff-Appellant,

versus

AMERICAN GENERAL LIFE INSURANCE COMPANY,
d.b.a. AIG Life and Retirement,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 19, 2020)

Before ED CARNES, Chief Judge, WILSON, and MARCUS, Circuit Judges.

PER CURIAM:

William Anderson, a plaintiff proceeding pro se, appeals the district court's denial of his motion to vacate his arbitration award on his claims of race discrimination and retaliation under Title VII of the Civil Rights Act and of race discrimination under 42 U.S.C. § 1981.  We affirm.

I.

The American General Life Insurance Company (AIG) hired Anderson as a sales agent in 2003.  In 2012 a "service manager" position opened up and four AIG employees — including Anderson — wanted it.  One of those employees, Roy Watson, was white while the other three were black.  An AIG general manager named Thomas Gallo was in charge of deciding who would get the promotion, and he decided to set up a contest for it.  Under the terms of that contest, the first employee to reach certain annual sales and renewal goals was supposed to win the promotion.  But that did not happen.  One of the black candidates (not Anderson) was the first to meet the contest criteria but was not promoted.  Instead, Watson was promoted when he met the goals several months later.  And Watson had a lot of help from Gallo in meeting the goals:  Gallo appointed Watson to be the temporary service manager — which gave Watson the chance to "push through" extra business to himself — and Gallo used his own position to push through some business to Watson as well.

2

When Anderson discovered that Watson was going to be promoted, he went to Gallo's office to complain because he had met the contest criteria too.  Gallo said that it was too late for him to take back Watson's promotion, but he offered to recommend to upper management that Anderson be transferred to Watson's old position.  And he would "make it worth [Anderson's] while" by letting him combine his book of business with the one Watson serviced before his promotion.  He also said that he would temporarily appoint Anderson to Watson's old position while they waited for upper management to approve the permanent transfer.

But at first, instead of giving Anderson the temporary appointment, Gallo gave it to a white employee, Rick Pickett.  Gallo later explained to Anderson that Pickett had put in extra work to compensate for Watson being appointed temporary service manager, and appointing Pickett temporarily to Watson's old job was a way to pay him back.  Gallo also said that Anderson's decision to take a two-week vacation during the temporary appointment period influenced his decision.  After some back-and-forth between Gallo and Anderson, Gallo agreed to give Anderson the temporary appointment after Anderson's vacation was over.  Gallo kept his promise, and Anderson worked on a temporary basis in Watson's old job from October to December 2012.  But in mid-December a higher-up AIG employee who did not know Anderson's race denied his request for a permanent transfer based on objective internal policies.

3

In 2014 Anderson, then represented by counsel, sued AIG in federal district court for employment discrimination under Title VII and § 1981. The district court dismissed Anderson's claims on the ground that they were subject to mandatory arbitration under the terms of his contract with AIG, and we affirmed. See Anderson v. Am. Gen. Life Ins., 688 F. App'x 667, 668–70 (11th Cir. 2017). In July 2017 he refiled his complaint in the district court and moved to stay the case pending arbitration. The court granted his motion.

The same day Anderson refiled his case, he filed a demand for arbitration with the American Arbitration Association. In that demand, he claimed in relevant part (1) that AIG violated Title VII by failing to promote him because of his race; (2) that AIG violated § 1981 by refusing to afford him the same right to make and enforce his employment contract as was enjoyed by a similarly situated white man; (3) that AIG retaliated against him in violation of Title VII when he engaged in protected activity; and (4) that his arbitration agreement with AIG was void and unenforceable.

The first arbitrator assigned to Anderson's case was Beverly Baker. She presided over an initial case management phone conversation during which Anderson contended that she lacked jurisdiction over the case because the arbitration agreement was unenforceable. Baker refused to hear any evidence at that time, but she did order the parties to brief the jurisdictional question. After

4

reviewing the briefs she issued an order finding that the arbitration agreement was valid and that she did have jurisdiction.  Anderson prepared a memorandum detailing the things about the phone conversation that he found troubling — including Baker's refusal to hear evidence — and Baker recused herself from the case a short time later.

After Baker's recusal a different arbitrator, Patricia Renovitch, was appointed.  Anderson urged Renovitch to revisit the jurisdictional issue, but she refused to do so and stood by Baker's order.  She then held a multi-day trial on the merits of Anderson's remaining claims.  She found the facts as we have described them in this opinion and ruled that Gallo's promotion of Watson violated Title VII and § 1981 because it discriminated against all of the black applicants (including Anderson) in favor of the one white applicant.  But she found that Gallo's temporary appointment of Pickett to Watson's old position did not violate those laws because Gallo had legitimate, non-discriminatory reasons for his decision. And she found that Anderson was not entitled to punitive damages because he failed to prove that upper management knew about the discriminatory nature of Gallo's contest.  As a result, she issued an interim award granting Anderson compensatory damages and reasonable attorney's fees.  Anderson requested that Renovitch reconsider her denial of punitive damages, but she refused to do so and

5

entered a final award granting Anderson the same compensatory relief as the interim award.

At that point his counsel withdrew and Anderson began representing himself. He filed in the district court a motion to vacate the arbitration award, contending that the arbitrator refused to hear material evidence, wrongly denied Anderson's motions for spoliation sanctions, raised an affirmative defense on AIG's behalf, and based her award on a mistake of fact. The district court denied the motion and Anderson brings this appeal.

## II.

When reviewing a district court's denial of a motion to vacate an arbitration award, we review the district court's factual findings for clear error and its legal conclusions de novo. Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010). "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (quotation marks omitted). By statute we can only vacate an arbitration award in four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

6

(3) where the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers . . . .

9 U.S.C. § 10(a); see Frazier, 604 F.3d at 1324.

## III.

Anderson's first contention on appeal is that arbitrator Baker wrongly refused to hear during the initial case management discussion evidence relating to his contention that the arbitration agreement was unenforceable and, as a result, the arbitrator lacked jurisdiction. But an arbitrator "need not consider all the evidence the parties seek to introduce" and may "reject evidence that is cumulative or irrelevant." Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1017 (11th Cir. 1998). The evidence Anderson wanted to introduce concerned whether AIG's upper management knew about the rigged promotion contest or procedure and whether AIG breached a particular term of the arbitration agreement: the so-called "open-door policy," an optional and informal dispute resolution procedure. None of that evidence was at all relevant to the jurisdictional question the arbitrator was considering.

Under the Federal Arbitration Act, "arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." Caley v. Gulfstream Aerospace Corp., 428

7

F.3d 1359, 1367 (11th Cir. 2005) (quotation marks omitted).  Anderson presented

Baker with three alleged grounds for invalidating his arbitration agreement with

AIG: that AIG had breached the agreement by failing to honor the open-door

policy, that the agreement lacked consideration, and that the agreement by its terms

was not mandatory.  Whether AIG's upper management knew about the rigged

promotion procedure had nothing to do with any of those three grounds.  And, as

we held the last time this case was before us, see Anderson, 688 F. App'x at 669–

70, if AIG did breach the open-door policy, that breach did not render the

arbitration agreement unenforceable.  So the arbitrator did not refuse to hear

relevant evidence.

Next, Anderson contends that arbitrator Renovitch engaged in misbehavior

when she denied his request for spoliation sanctions.[1]  Before trial Anderson asked

AIG to produce certain "new business reports," but AIG had failed to preserve

those reports.  Anderson requested a spoliation presumption — that is, a

presumption that the allegedly spoliated evidence would have proved Gallo and

Watson manipulated the contest.  The arbitrator did not address that request.

To prove misbehavior Anderson must show, as a preliminary matter, that his

rights have been prejudiced.  See 9 U.S.C. § 10(a)(3) (stating that an award can be

---

[1] In his opening brief Anderson also asserted that Renovitch's failure to consider his request for spoliation sanctions showed bias or prejudice, see 9 U.S.C. § 10(a)(2).  But in his reply brief he expressly abandoned that position.

8

vacated "where the arbitrators were guilty of misconduct in . . . any other misbehavior by which the rights of any party have been prejudiced"); Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1017 (11th Cir. 1998) (stating that under § 10(a)(3) a party challenging an arbitration award based on the arbitrator's "misbehavior" must show prejudice), overruled in part on other grounds, Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 584–89 (2008).  Before the arbitrator issued her initial award, Anderson argued the spoliated evidence would have shown that Gallo and Watson manipulated the promotion contest.  But the arbitrator found in Anderson's favor on that question.  That means her failure to address Anderson's request for spoliation sanctions did not prejudice Anderson.

After arbitrator Renovitch entered her interim award, Anderson changed his tune about what the allegedly spoliated evidence would show.  He submitted a request for reconsideration of the denial of punitive damages, arguing that the missing evidence would have shown that AIG's upper management knew about the rigged contest.  The arbitrator did not consider Anderson's new argument on spoliation, but her failure to do so was not "misbehavior" in any sense.  In federal litigation, courts enforce a number of rules and principles that prevent parties from raising arguments too late.  See, e.g., In re Egidi, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); Wilchombe v. TeeVee Toons,

9

Inc., 555 F.3d 949, 957 (11th Cir. 2009) ("A motion for reconsideration cannot be used to . . . raise argument or present evidence that could have been raised prior to the entry of judgment."). Those same principles may be properly applied in an arbitration proceeding where there are fewer procedural protections than in federal court. See Rosensweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1333 (11th Cir. 2007). The refusal to consider Anderson's belated argument was not misbehavior.

Anderson next contends that arbitrator Renovitch exceeded her powers, showed bias, and engaged in misconduct by asserting an affirmative defense to punitive damages on behalf of AIG when AIG itself had failed to do so. The factual premise of his contention is belied by the record. The arbitrator never asserted an affirmative defense to punitive damages on behalf of AIG. The denial of punitive damages was expressly based on Anderson's failure to prove that he was entitled to them, not on any affirmative defense.

Anderson further contends that arbitrator Renovitch "violated her contractual agreement" by applying the wrong burden of persuasion. AIG had argued that once Anderson made out a prima facie case AIG faced only an "exceedingly light" burden of producing a non-discriminatory reason for its action. The arbitrator rejected that AIG argument on the first day of trial. That rejection, according to Anderson, amounted to an agreement that AIG had to meet more than

10

an "exceedingly light" burden.  He complains that the arbitrator violated the agreement by permitting AIG to prove a non-discriminatory reason by less than a preponderance of the evidence and making fact findings accordingly.  Those findings, Anderson says, caused him to lose on his retaliation claim and on his claim that AIG discriminated against him by appointing Pickett to the temporary position that Anderson had been promised.

Contrary to Anderson's theory, the rulings of factfinders and decision makers do not amount to contractual agreements.  Not only that, but his theory finds no place in the statutory grounds for vacating an arbitration award.  See 9 U.S.C. § 10(a).  A court cannot vacate an arbitration award on grounds not set out in § 10.  See Frazier, 604 F.3d at 1324

Finally, Anderson challenges one of Renovitch's fact findings: that Pickett put in extra work after Watson was transferred to the temporary service manager position.  Anderson has waived that argument because he did not raise it in the district court.  Cf. Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009) ("It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").  And even if Anderson had not waived the argument, an "arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award."  Cat Charter, LLC v.

11

Schurtenberger, 646 F.3d 836, 840 n.4 (11th Cir. 2011) (quoting Major League

Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)).

**AFFIRMED.**