[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-10648

————————————————

D.C. Docket No. 5:12-cv-00092-MTT

CURTIS DAVIS,

Movant-Appellee,

versus

PRODUCERS AGRICULTURAL INSURANCE
COMPANY,

Respondent-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————————

(August 6, 2014)

Before TJOFLAT, WILSON and RIPPLE,* Circuit Judges.

RIPPLE, Circuit Judge:

——————————————

* Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit,
sitting by designation.

Curtis Davis brought this action in the district court to challenge the decision of an arbitrator that had denied his claim under a crop insurance policy obtained from Producers Agricultural Insurance Company ("ProAg"). Mr. Davis filed a motion to vacate the arbitrator's award and then moved for summary judgment. The district court granted Mr. Davis's motions and vacated the arbitrator's decision. ProAg now appeals.

The district court erred in vacating the arbitrator's decision. Specifically, the arbitrator was entitled to conclude that ProAg had the authority under the policy to set a reasonable deadline for the receipt of necessary documentation in support of the claim. Mr. Davis's failure to comply with that deadline was an adequate basis for ProAg's denial of his claim. Moreover, under the circumstances presented in this case, the arbitrator was entitled to make his findings without first seeking a formal opinion of the Federal Crop Insurance Corporation ("FCIC"), the federal agency with authority over crop insurance policies. Finally, Mr. Davis waived any argument based upon the arbitrator's failure to deliver his decision and award within the time limitations provided by the policy. Mr. Davis did not object when the arbitrator's deadline passed; instead, he waited until after he received an adverse decision and then filed this action in the district court. Accordingly, we now reverse the judgment of the

2

district court and remand the case for further proceedings consistent with this opinion.

# I

# BACKGROUND

## A. Facts

### 1. The Policy, the Crop and the Claim

Mr. Davis farms in Pulaski County, Georgia. ProAg is a private insurance company that writes federal crop insurance policies pursuant to a Standard Reinsurance Agreement with the FCIC. At all times relevant to this action, Mr. Davis maintained a crop insurance policy written by ProAg to cover his cotton crop. In 2008, Mr. Davis's cotton crop had a low yield caused by periods of both drought and excessive rainfall, irrigation problems and a tropical storm. He began harvesting in late October, and he completed his harvest on December 24, 2008.

Two days prior to completing his harvest, on December 22, Mr. Davis notified his crop insurance agent, Pat Rush of the Rush-Yearty Insurance Agency, of the possibility of a claim under his policy because of the low yield. The agency, however, failed to forward the notice to ProAg until January 8, 2009. The record is not clear regarding what additional information Mr. Davis submitted to ProAg

3

during this initial period after his notice to Rush in late December. In particular, the record does not contain a copy of any completed indemnity claim labeled as such. It is clear that, in evaluating the claim, ProAg adjusters visited the Davis farm in January, February and March. The record also contains a form titled "Delayed Notice of Loss/Delayed Claim Report" dated March 24, 2009, on which an adjuster had written "Claim was on time. Delayed Original Adjuster behind in processing claim."[1]

On March 20, 2009, adjuster Lamar Jones authored a Special Report indicating that he could not substantiate Mr. Davis's claimed losses as weather-related. He relied in part on comparisons to neighboring farms and weather records. The record also contains internal ProAg forms signed by Mr. Davis on the same date calculating the loss on the cotton crop, apparently supported by Mr. Davis's production reports from his ginnery ("gin sheets").

ProAg notified Mr. Davis, by way of letter dated June 12, 2009, that "the current information provided and determinations made would result in your claim being denied. At this time additional information is being requested from you in an effort to support your claim."[2] It continued: "As you are aware, your loss was

_____

[1] R.16-1 at 19.

[2] R.3-2 at 1.

4

reported beyond the time allowed by the policy.  Section 15 . . . provide[s]

information regarding your duties . . . in the event of a loss."[3]  The letter did not

---

[3]  Id. at 1-2.  Section 15 of the crop insurance policy, entitled "Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage," provides, in relevant part:

Your Duties -

(a)  In case of damage to any insured crop you must:

. . . .

    (2)  Give us notice within 72 hours of your initial discovery of damage (but not later than 15 days after the end of the insurance period), by unit, for each insured crop.

. . . .

    (4)  Cooperate with us in the investigation or settlement of the claim, and, as often as we reasonably require:

        (i)  Show us the damaged crop;

        (ii)  Allow us to remove samples of the insured crop; and

        (iii)  Provide us with records and documents we request and permit us to make copies; and

    (5)  Give us notice of your expected revenue loss not later than 45 days after the date the Harvest Price is released.

. . . .

(c)  In addition to complying with the notice requirements, you must submit a claim for indemnity declaring the amount of your loss not later than 60 days after the Harvest Price is released unless you request an extension in writing and we agree to such extension.  Extensions will only be granted if the amount of the loss cannot be determined within such time period because the information needed to

                     (continued...)

otherwise specify what Mr. Davis had failed to provide and what deadline he had not satisfied.  It did, however, note that "[a]t our request, you are required to provide the following documentation in order for us to determine your loss."[4]  The letter went on to list nine required items, including "proof of the cause or causes of loss that contributed to your reported loss and the time frames in which they occurred."[5]  Because Mr. Davis had indicated that certain portions of his crop were not irrigated, the letter further requested an additional three items relating to

---

[3](...continued)
> determine the amount of the loss is not available.  The claim for indemnity must include all information we require to settle the claim.  Failure to submit a claim or provide the required information will result in no indemnity, prevented planting payment or replant payment (Even though no indemnity or other payment is due, you will still be required to pay the premium due under the policy for the unit).

(d)    You must:

    (1)    Provide a complete harvesting and marketing record of each insured crop by unit including separate records showing the same information for production from any acreage not insured. . . .

    . . . .

(e)    You must establish the total production or value received for the insured crop on the unit, that any loss of production or value occurred during the insurance period, and that the loss of production or value was directly caused by one or more of the insured causes specified in the Crop Provisions.

R.9-2 at 15-16 (Policy § 15(a)-(e)).  The harvest price for cotton was released on December 10, 2008.

[4]  R.3-2 at 2.

[5]  Id.

6

irrigation practices.  The letter gave a thirty-day deadline for a response.  The record does not disclose whether Mr. Davis took any action during the following thirty days.

In a letter dated July 21, 2009, approximately forty days after its prior letter, ProAg formally denied Mr. Davis's claim.  This letter recited that "ProAg has not received a response in writing from you and /or any of the items we requested and that are required by the policy."[6]  It further stated:

> Your claim has been denied due to, but not limited to, failure to comply with "Section 15 — Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage" of the [policy].  Specifically, you are required to assist us in the investigation of your claim, report[] all notices timely, and submit your claim for indemnity not later than 60 days after the End of Insurance Period.  Since you did not respond to our request for more information we are simply not able to make any determinations as to the cause of loss, production to be counted or uninsured causes to be assessed, and unit eligibility based on Irrigated or Non-irrigated acreage reported.  For future reference, please review all policy requirements.[7]

The letter also advised Mr. Davis of his right to contest the determination in mediation or arbitration.

By handwritten letter and accompanying documentation dated November

---

[6] R.3-3 at 1.

[7] Id.

22, 2009, some four months after the claim was denied, Mr. Davis responded to ProAg's request.  Mr. Davis then filed for arbitration of his claim, demanding an award of $348,204.50.[8]

### 2. Arbitration Proceedings

Beyond the evidence discussed above and, therefore, indisputably in ProAg's possession prior to June 12, 2009, the arbitration record contains expert opinions regarding rainfall and local irrigation practices, receipts related to the crop, lab testing results, news items relating to rainfall during the relevant period and similar items.  Some of those documents plainly were not received during the claims period because they are dated after that period had expired; the origins and submission dates of the remainder of the items are unclear.

After a hearing and post-hearing briefing, the record of proceeding closed on November 11, 2011.  Thirty-three days later, on December 15, 2011, the arbitrator issued his decision and denied Mr. Davis's claim in its entirety. Specifically, the arbitrator found that Mr. Davis's November response to the June request was "[c]learly . . . outside the Policy's timelines[] and did not provide all requested and required information/documentation to adjust and complete the

---

[8] See R.1-1 at 2.

8

claim."[9]  He further found:

> Other than Claimant's testimony and the aforementioned undated letter of the Local Agent [confirming a delay in forwarding the initial report of loss to ProAg], no documentary evidence was presented or offered by Claimant to prove he submitted the required information/documentation requested in Respondent's June 12, 2009 letter within the time provided by Respondent, nor why he failed to submit the required claim information/documentation due under the Policy.  Claimant clearly failed to comply with the Policy provisions and terms as it relates to his duties and responsibilities to provide information/documentation for his claim per Section 15 of the Policy.

> Claimant's failure to comply with the Policy provisions as stated above is reason and justification for Respondent to deny Claimant's claim.  Therefore, having made these factual determinations, it is not necessary to make any additional factual determinations on issues of irrigation practices, drought, water supply, excessive Fall rains, etc.[10]

## B.  District Court Proceedings

Upon receipt of the decision of the arbitrator denying his claim, Mr. Davis filed this action in the district court, seeking vacatur of the arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  Specifically, he invoked 9 U.S.C. § 10(a)(4), which pertains to awards in which "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[9]  Id. at 5.

[10]  Id.

definite award upon the subject matter submitted was not made."

After filing an amended motion to vacate, Mr. Davis moved for summary judgment. Mr. Davis presented two principal arguments. First, he argued that, under the crop insurance policy at issue, the arbitration proceeding was required to be conducted "'in accordance with the rules of the American Arbitration Association' (AAA)."[11] Rule 41 of the AAA Rules mandated that an award be entered no later than thirty days from the close of the hearing, a period of time which was exceeded in his case by three days. In his view, therefore, the court should have vacated the award as untimely. His second argument was that, when the arbitrator considered whether Mr. Davis timely had complied with the policy requirements for submitting a claim and supporting documentation, the arbitrator had engaged in an interpretation of policy terms, rather than an application. In Mr. Davis's view, under federal regulations and the policy itself, the interpretive task is reserved to the FCIC, and, therefore, the arbitrator exceeded his authority.

ProAg responded to both motions. In addition to opposing Mr. Davis's arguments about the delay in the arbitrator's decision and whether the arbitrator had exceeded his authority, ProAg argued that it was unnecessary to reach those arguments because, in its view, the arbitrator had determined that Mr. Davis had

---

[11] R.6-1 at 14 (quoting 7 C.F.R. § 457.8 (Policy § 20(a))).

10

failed to meet his burden of proof based on the evidence presented regardless of any failure to abide by any applicable timelines.

After a hearing on the motion, the district court granted summary judgment for Mr. Davis, vacating the arbitrator's award. After acknowledging its limited power to vacate an arbitration award under 9 U.S.C. § 10, the district court addressed the parties' contentions. First, the court disagreed with ProAg's characterization of the arbitrator's findings as based in part on the burden of proof. It concluded instead that the arbitrator's decision was based entirely on its assessment of the timeliness of Mr. Davis's submission. Next, in deciding the issue of Mr. Davis's timely compliance with the policy, the district court agreed with Mr. Davis that the arbitrator impermissibly had interpreted the terms of the policy. The court concluded that resolution of the dispute turned on the proper characterization of ProAg's June 12, 2009 letter requesting further documentation of Mr. Davis's claim. Specifically, in the court's view, the crucial issue was whether that letter represented an extension by ProAg of a deadline provided in the policy or whether it was a new, first request for additional information not explicitly required by the policy (and therefore not subject to any of the policy's specific deadlines).

To answer this question, the district court turned to the terms of the policy.

11

It identified in Section 15 "only [three] explicit timeliness requirements relevant to Davis's claim for submitting notices or documentation" and an additional obligation "to '[c]ooperate with [ProAg] in the investigation or settlement of the claim,'" including "'[p]rovid[ing ProAg] with records and documents'" at its request.[12] The court noted that, in addition to the request for "'all information,'" the policy specifically requires submission of "'a complete harvesting and marketing record' of the crop," the total production or value received on the crop, proof that the loss occurred during the insurance period and proof that "the loss was 'directly caused by one or more of the insured causes.'"[13] However, continued the court, there is no specific deadline under the policy for requests for <u>additional</u> information.

The court determined that, although the arbitrator made reference to a failure to comply with the timeliness requirements of Section 15, he never referenced a particular provision of Section 15 that Mr. Davis had violated. Indeed, the only specific reference to a deadline in the arbitrator's decision was Mr. Davis's failure to comply with the thirty-day deadline set by the June 12 letter. The court continued,

---

[12] R.17 at 10 (second and fourth alterations in original) (quoting R.3-1 at 15).

[13] <u>Id.</u> at 10-11 (quoting R.3-1 at 15).

12

> This finding raises the question of whether the arbitrator concluded that ProAg could set deadlines not found in the policy and then use those deadlines as a basis for denial of a claim for procedural noncompliance.  While it is unclear precisely how the arbitrator interpreted the letter, it is clear that he interpreted the letter as a procedural requirement regarding Davis's proof of his claim.[14]

The court further ruled that, although "the award suggests that there were some issues with the sufficiency of the evidence,"

> the arbitrator never made a finding that the information submitted to ProAg was insufficient, but found instead that Davis did not submit what the insurance company requested within the policy's and the letter's deadlines.  The timeliness issue decided by the arbitrator was the type of matter reserved for interpretation by the FCIC.  The arbitrator clearly interpreted the language of Section 15 to arrive at a conclusion that failure to comply with the deadline in the June 12 letter could result in denial of the claim and, in so doing, made a "policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure[,]"[15]

a matter which should have been reserved for the FCIC pursuant to 7 C.F.R. § 457.8 (§ 20(a)(1) of the reinsurance policy).  According to the district court, "the failure to obtain a required interpretation from the FCIC results in the nullification of an arbitration award" because it demonstrated that the arbitrator acted in excess

---

[14]  Id. at 11.

[15]  Id. at 13-14 (quoting 7 C.F.R. § 457.8 (§ 20(a)(1) of the policy)).

13

of his authority.[16]

Having found the award subject to vacatur on this ground, the court rejected Mr. Davis's alternate claim based on the three-day delay in the issuance of the arbitration award under AAA Rule 41. The district court rested its conclusion on essentially two bases: First, it noted a decision of the former Fifth Circuit in which the court declined to vacate an award as untimely in part because there had been no immediate objection and, therefore, a waiver.[17] Second, it relied on a general reluctance in the case law to vacate an award that was issued in a reasonable time frame where there had been no showing of harm or prejudice from the untimeliness.

ProAg timely appeals.


## II

## DISCUSSION

### A.

---

[16] Id. at 14.

[17] See id. at 15 (citing Lodge No. 725, Int'l Ass'n of Machinists v. Mooney Aircraft, Inc., 410 F.2d 681, 683 (5th Cir. 1969)).

Our jurisdiction and the district court's jurisdiction are secure.[18]  We review the district court's decision on a motion to vacate an arbitration award de novo and its factual findings for clear error.  White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F.3d 1277, 1280 (11th Cir. 2011).  There is a presumption in the FAA in favor of confirmation of arbitrators' awards; they will be vacated only in certain narrow circumstances defined in the statute.  Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010).  The ground for vacatur specifically at issue in the present case is whether "the arbitrator[] exceeded [his] powers," 9 U.S.C. § 10(a)(4).[19]

---

[18]  The district court considered Mr. Davis's petition under 9 U.S.C. § 10, and its jurisdiction over this matter was based on 28 U.S.C. § 1332.  See Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 841 n.7 (11th Cir. 2011) (noting that the FAA provides the grounds for vacatur of an arbitration award but requires an independent basis for federal jurisdiction).  We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(E).

[19]  Section 10(a) includes only four discrete grounds for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(continued...)

As we already have noted, the district court took the view that the arbitrator had exceeded his authority. ProAg now raises two principal challenges to the district court's decision. First, it claims that the district court erred in reading the arbitrator's decision as focusing exclusively on timeliness. In its view, the decision also rested on Mr. Davis's failure to meet his substantive burden to establish entitlement to payment of his claim. Second, it claims that, even if the arbitrator's decision <u>did</u> rest entirely on timeliness, the arbitrator did not engage in an impermissible policy interpretation that should have been reserved to the FCIC.[20] In reply, Mr. Davis submits that the district court correctly determined

---

[19](...continued)

9 U.S.C. § 10(a). The only ground urged by Mr. Davis at any stage of this proceeding has been ground four.

[20] ProAg makes two additional arguments that need not occupy us long. First, it contends that the district court never found an acceptable statutory basis for vacating the award. This argument plainly lacks merit. Although the district court never invoked the language of 9 U.S.C. § 10(a)(4) in its summation paragraphs, it set forth the statutory standard at the outset of its discussion and noted that the principal challenge that Mr. Davis had brought was that the arbitrator had exceeded his authority. Moreover, the district court was focused entirely on the question whether the arbitrator could decide the issue presented without seeking an FCIC interpretation, which is clearly a question of the limits of the arbitrator's authority. Having decided that the authority was exceeded (i.e., that the task belonged to the FCIC alone), the district court held that the order was "subject to vacatur on this ground." R.17 at 14. There can be no serious question that the district court's decision was based on 9 U.S.C. § 10(a)(4).

   ProAg further contends, in the alternative, that, to the extent the district court did find vacatur appropriate under § 10(a)(4), it misinterpreted the statute. Relying on <u>White Springs Agricultural Chemicals, Inc. v. Glawson Investments Corp.</u>, 660 F.3d 1277 (11th Cir. 2011), ProAg reminds us that "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision

(continued...)

16

that the arbitrator exceeded his authority by basing his decision on the failure of Mr. Davis to meet a deadline that was set by ProAg but that was not included in the policy terms without first seeking an FCIC interpretation that such deadline was permissible. He also raises again his argument regarding the untimeliness of the arbitrator's decision under AAA Rule 41.

Because the relevant authorities are few and because a decision on the proper division of authority between the arbitrator and the FCIC has the potential to affect significantly the administration of the federal statutory scheme, we invited the Government to submit a brief as amicus curiae.[21] With the views of the United States now in hand, we proceed to our consideration of the issues.

## B.

We begin with a brief discussion of the FCIC and its role in crop insurance agreements. The FCIC operates under the supervision of the Risk Management Agency of the United States Department of Agriculture. It was established by

---

[20](...continued)
may be unenforceable" under subsection 4. Appellant's Br. 21. The FCIC appears to agree with Mr. Davis that the case does pose an interpretive—rather than simply factual—issue; however, it submits that the issue already has been resolved in a binding interpretation that grants the insurer the authority to act as it did.

[21] The court expresses its sincere thanks to the United States for accepting its invitation and submitting a very fine brief. It has been of great assistance in our evaluation of this case.

17

section 503 of the Federal Crop Insurance Act ("FCIA" or the "Act"), ch. 30, 52 Stat. 72 (1938) (codified as amended at 7 U.S.C. § 1503). See generally 7 U.S.C. §§ 1501-24 & 1531. The FCIC acts, when certain eligibility conditions are met, as reinsurer on crop insurance policies written by approved private insurers such as ProAg.

In order to qualify for reinsurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations. Consequently, "[t]he FCIA generally establishes the terms and conditions of insurance, . . . even though the crop insurance policy is between the farmer and an approved insurance provider."[22] Indeed, 7 C.F.R. § 457.8 includes text for a "Common Crop Insurance Policy" used by insurers, standard throughout the industry, when the FCIC provides reinsurance. Among the matters determined by the FCIC are where crop insurance will be offered and on what crops, the levels of coverage, the expected market prices for crops, premium rates paid to insurers and the lack of insurability of certain risks. See generally 7 U.S.C. § 1508. The FCIC provides, as necessary, interpretations of the statute and regulations to interested parties. The FCIC's interpretations, issued in the form of Final Agency

---

[22] Brief for the United States as Amicus Curiae Supporting Appellant at 6 [hereinafter Gov't Br.].

18

Determinations ("FADs"), are "binding on all participants in the Federal crop insurance program." 7 C.F.R. § 400.765(c). However, the FCIC "will not interpret any specific factual situation or case." Id. § 400.768(a).

The standard language found in the regulations for inclusion in the common crop insurance contract provides that all disputes between insurer and insured are subject to mediation and/or arbitration. Id. § 457.8 (Policy § 20(a)(1)). That same provision, however, explicitly requires that

> if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either [Claimant] or [Insurer] must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

Id. With this background, we now turn to an assessment of the parties' contentions.

## C.

### 1.

The arbitrator determined that Mr. Davis's failure to abide by a deadline—identified only in a letter from ProAg to Mr. Davis, without reference to a particular policy provision mandating such a schedule for a response—justified

19

the denial of an award to Mr. Davis.  Because there is no specific policy provision requiring the deadline set in the letter, resolution of the issue requires us to decide whether the arbitrator's untimeliness decision rested on an interpretation of the standard Policy and thus exceeded his authority by deciding a matter reserved to the FCIC.

The Government, as amicus curiae, takes the view that the district court erred in characterizing the timeliness question before the arbitrator as an interpretive issue that required prior submission to the FCIC:

> While the insurance policy itself does not specify a deadline for an insurer's extension of the time in which to provide information/ documentation, the FCIC has issued a ruling that insurers "have the discretion to impose a reasonable deadline for an insured to provide documentation when requested."  See FAD-87 (Mar. 27, 2008), http://www.rma.usda.gov/regs/533/2008/fad-87.html.  Since FADs are binding in all crop insurance arbitrations, 7 C.F.R. § 457.8, the arbitrator could have reasonably concluded that ProAg was authorized to issue a 30-day deadline for Davis to respond with the requested information, and to deny Davis' indemnity claim for failure to comply with that deadline.  The FCIC had already resolved that particular policy issue, and the arbitrator was not required to seek another FCIC interpretation on the same issue.

Gov't Br. 15.[23]

---

[23]  The district court noted the existence of FAD-87, see R.17 at 12, but apparently did not believe it answered the precise question presented by the facts of this case.  As the Government correctly notes, however, the purpose of FADs is to resolve interpretive issues across factual scenarios.

In essence, the FCIC agrees with Mr. Davis that whether the insurer can impose a reasonable deadline, not explicitly found in the policy, on the receipt of information from the insured is an interpretive issue within the exclusive province of the FCIC. However, the Government further points out that the agency already has exercised its prerogative and provided the interpretation by making clear in an earlier ruling that an insurer can impose such a reasonable deadline.  We accord these determinations—that the issue was one of interpretation and that insurers can impose such deadlines—substantial weight because they were made by the agency charged with administration of the statute.  See United States v. Mead Corp., 533 U.S. 218, 234, 121 S. Ct. 2164, 2175, 150 L. Ed. 2d 292 (2001) ("[A]n agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires."  (citation omitted) (internal quotation marks omitted)); id. at 235, 121 S. Ct. at 2176 ("Such a ruling may surely claim the merit of its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight."); see also Reno v. Koray, 515 U.S. 50, 61, 115 S. Ct. 2021, 2027, 132 L. Ed. 2d 46 (1995) (holding that an "internal agency guideline, which is akin to an 'interpretive rule'" not

21

subject to notice-and-comment rule-making, "is still entitled to some deference").

Because the FCIC has determined, as an interpretive matter, that insurer-imposed deadlines are compatible with the purposes of the statutory and regulatory scheme, the individual factual determinations that such a deadline was imposed and that, in the specific circumstances of the transaction, its imposition was reasonable were matters for the arbitrator. The arbitrator therefore acted well within his discretion in concluding that, because Mr. Davis had failed to comply with the thirty-day deadline and thus breached his duty under the contract, ProAg was within its rights to determine that the claim ought to be denied.

In sum, because the FCIC in FAD-87 already has authorized the insurer to "impose a reasonable deadline for an insured to provide documentation when requested," further submission of the issue to the FCIC was not required. Accordingly, the arbitrator did not exceed his authority when he found that the failure to abide by the deadline in the June 12th letter was a sufficient basis for denial of the claim.[24]

---

[24] The district court characterized the arbitrator's decision as focusing solely on the timeliness of Mr. Davis's submission; the court ruled that "the arbitrator never made a finding that the information submitted to ProAg was insufficient, but found instead that Davis did not submit what the insurance company requested within the policy's and the letter's deadlines." R.17 at 13. ProAg disputes this characterization. In its view, the arbitrator also reached, and decided, that there was insufficient evidence to support an award for Mr. Davis. Mr. Davis submits that the arbitrator did not reach this question.

(continued...)

22

**2.**

Because we find no basis for overturning the arbitrator's award as outside his authority, we must consider Mr. Davis's alternate argument that the failure of the arbitrator to issue the award within the thirty-day timeline provided in Rule 41 of the AAA is grounds for vacatur.[25]

Like the district court, we are persuaded that Lodge No. 725, International Association of Machinists v. Mooney Aircraft, Inc., 410 F.2d 681, 683 (5th Cir. 1969), forecloses Mr. Davis's argument.  In Lodge No. 725, the arbitration

---

[24](...continued)
Having determined that the arbitrator acted within his authority in determining that Mr. Davis did not submit the required information in a timely manner and that his failure to do so justified ProAg's denial of his claim, we need not reach this question.  The decision of the arbitrator is less than clear on this issue.  While we can see an arguable basis for the district court's view, a contrary reading is also quite plausible.

[25] At the time of the proceedings before the arbitrator, Rule 41 of the AAA Rules provided:

R-41.  Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures 21 (2009), https://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/documents/document/z2uy/mde1/~edisp/adrstage2015619.pdf.  Nearly identical language appears in the 2013 version of the rules at Rule 45.  See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures 27 (2013) https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased.

23

agreement provided a three-day deadline for issuance of an award, and the arbitrator did not act until forty-four days had passed.  Once the decision adverse to the employer was handed down, it protested that the decision was out of the time frame provided by the contract and therefore invalid.  The court disagreed, first finding waiver in the employer's decision not to protest the lapse of time until a decision was rendered.  It continued, "Moreover, we would be extremely loath to penalize the beneficiary of the award because of the lapse of time over which he had no possible control.  This is especially true because of the extreme shortness of the period." Id.  Because the court based its conclusion in significant part on waiver, it further held that the same decision would obtain whether the award were only one day beyond the period or forty-one. See id. & n.4.

We think it sufficient to add that the AAA Rules include a waiver provision. Specifically, at the time of the award in the present case, Rule 37 of the Commercial Arbitration Rules and Mediation Procedures provided:  "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object."[26]

---

[26] American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures 21 (2009), https://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/

(continued...)

Mr. Davis did not object at the expiration of the thirty-day period. Nor did he object when the untimely decision was issued three days later. Instead, he waited until he filed this action in the district court. Moreover, he has made no effort to show that he was in any way prejudiced by the delay. Accordingly, we see no basis for overturning the arbitrator's decision based on the failure to abide by the AAA rules governing the time period for issuance of a decision.

## Conclusion

Because the FCIC already had issued a binding opinion authorizing an insurer to set reasonable deadlines for the submission of requested documentation, the arbitrator did not exceed his authority in basing his decision on the timeliness of Mr. Davis's claim documentation. Furthermore, we shall not overturn the arbitrator's award where the losing party failed to object immediately upon the expiration of the deadline, especially where there has been no demonstration of any prejudice arising from the delay. Accordingly, the order of the district court vacating the arbitration award is reversed. The case is remanded to the district court for proceedings consistent with this opinion.

---

[26](...continued)
documents/document/z2uy/mde1/~edisp/adrstage2015619.pdf.

25

REVERSED and REMANDED.