# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3018

_____

Terry R. Balvin

*Plaintiff - Appellee*

v.

Rain and Hail, LLC

*Defendant - Appellant*

_____

No. 18-3061

_____

Terry R. Balvin

*Plaintiff - Appellant*

v.

Rain and Hail, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 16, 2019
Filed: December 2, 2019

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Rain and Hail, LLC appeals the district court's order vacating an arbitration award, arguing that the district court did not properly defer to the arbitrator's decision. Claiming that the district court should have vacated the arbitration award for additional reasons, Terry Balvin cross appeals. We affirm in part, reverse in part, and remand to the district court to enter an order confirming the arbitration award.

Rain and Hail issues federal crop insurance policies through a Standard Reinsurance Agreement with the Federal Crop Insurance Corporation ("FCIC"). The FCIC reinsures crop insurance policies and is supervised by the Risk Management Agency ("RMA") of the United States Department of Agriculture. *See Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284-85 (11th Cir. 2014); 7 U.S.C. § 6933. To qualify for the reinsurance, insurers must comply with the Federal Crop Insurance Act ("FCIA") and FCIC regulations. *Davis*, 762 F.3d at 1284. Though the policy is a contract between a farmer and an insurance provider, the FCIC determines the terms and conditions of federal crop insurance policies. *See id.* at 1284-85; 7 C.F.R. § 457.8.

Rain and Hail issued a crop insurance policy to Balvin, a South Dakota farmer, in 2015. Balvin filed a claim under the policy later that year. He claimed he could not timely harvest his crop due to moisture, a severe blizzard, and large snowfall. Rain and Hail determined that the appraised value of Balvin's crop exceeded his policy's guaranteed minimum crop production and denied his claim as a "non-loss."

Balvin initiated arbitration proceedings in accordance with the terms of the policy, and the arbitrator denied his claim. Balvin filed a motion to vacate the arbitration award in the United States District Court for the District of South Dakota. Rain and Hail filed a motion to confirm the arbitration award. The district court

denied in part and granted in part Balvin's motion and denied in part and granted in part Rain and Hail's motion. Rain and Hail appeals, arguing that the arbitrator did not exceed his powers by interpreting a policy or procedure. Balvin cross appeals, arguing that the arbitration decision should be vacated for an additional reason—the arbitrator exceeded his powers by determining Balvin abandoned his crop.

We review *de novo* the district court's legal conclusions, and we review its findings of fact for clear error. *See Ploetz for Laudine L. Ploetz, 1985 Tr. v. Morgan Stanley Smith Barney LLC*, 894 F.3d 894, 897 (8th Cir. 2018); *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). We "accord an extraordinary level of deference to the underlying award." *SBC Advanced Sols., Inc. v. Commc'ns Workers of Am., Dist. 6*, 794 F.3d 1020, 1027 (8th Cir. 2015) (internal quotation marks omitted).

The Federal Arbitration Act specifies when a district court may vacate an arbitration award. As relevant here, a district court may vacate the award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (brackets and internal quotation marks omitted). "An arbitrator does not 'exceed his powers' by making an error of law or fact, even a serious one." *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018). "[S]o long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the award should be confirmed." *Id*. (internal quotation marks omitted).

Rain and Hail argues that, contrary to the district court's decision, the arbitrator did not exceed his powers by interpreting a policy or procedure when he concluded that the appraised value of Balvin's crop should be used to determine whether Balvin had an insured loss, resulting in a denial of Balvin's claim. The crop

insurance policy states that the arbitrator cannot interpret the policy or FCIC procedures: "[I]f the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either [Balvin] or [Rain and Hail] must obtain an interpretation from FCIC . . . ." It further provides that "[f]ailure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award."

Balvin claims, and Rain and Hail agrees, that FCIC handbooks require a production worksheet and a signed appraisal worksheet when an appraisal is performed and that Rain and Hail did not complete a production worksheet nor was the appraisal worksheet signed when Rain and Hail appraised Balvin's crop. Balvin thus argued before the district court that the arbitrator "exceeded his authority" because the arbitrator's determination required that he interpret the policy term "appraised value." The district court agreed, observing that the parties do not point to an "applicable procedure for determining appraised value when a Production Worksheet is not done and Appraisal Worksheets are not signed." It therefore concluded that the arbitrator exceeded his powers because Balvin's argument about appraised value "is precisely the type of dispute regarding the application of policy and procedure that needed to be submitted to the FCIC for interpretation."

On appeal, Rain and Hail argues that the arbitrator did not exceed his authority because he "reasonably concluded that the dispute over the corn appraisals completed by Rain and Hail was an evidentiary or factual dispute within his authority to resolve." Balvin, on the other hand, argues that whether the appraisal dispute involves an interpretation is a threshold arbitrability question for a court to decide. But the policy's arbitration clause incorporated the American Arbitration Association ("AAA") rules. "By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011). Thus, the arbitrator was

free to determine any threshold arbitrability questions to the extent they were at issue.

After reviewing Balvin's briefing and the arbitrator's decision, we conclude that the arbitrator did not exceed his powers because the dispute about the interpretation of "appraised value" was not even before the arbitrator. Balvin argued to the arbitrator that the appraisals were irrelevant and inaccurate. Though Balvin did point out that the appraisals were not signed and were incomplete, he did not argue that this required the arbitrator to interpret the policy term "appraised value," and Balvin acknowledged that "[t]he hearing officer in [his] arbitration [would] need to decide whether to allow the appraisals to dictate the adjustment of the loss."

The arbitrator addressed Balvin's arguments, saying, "Claimant implied in his testimony and argued in his post-hearing brief that the January and March appraisals are 'irrelevant,' 'questionable,' or that the numbers may have been 'fudged.' There is no evidence of a motive to falsify that might support such inferences." Based on this language and the arguments before the arbitrator, the arbitrator was at least "arguably construing or applying the contract and acting within the scope of his authority" because he was making a credibility determination about the appraisals, rather than interpreting a policy or procedure. *See Beumer Corp.*, 899 F.3d at 565.

It was not until after the arbitration decision that Balvin first raised the argument that the arbitrator impermissibly interpreted a term of the policy.[1] An arbitrator has not exceeded his powers where neither party suggested that a term of

---

[1]The RMA has contemplated such a scenario. It issued a Final Agency Decision in 2015 recognizing that a dispute about the interpretation of a policy or procedure "may arise after the arbitration award has been rendered." RMA Final Agency Determination 230 (U.S.D.A. 2015). And according to a new FCIC regulation, if either party to an arbitration "believes an award or decision was rendered by . . . [an] arbitrator . . . based on a disputed provision in which there was a failure to request a final agency determination or FCIC interpretation . . . the party may request FCIC review the matter to determine if a final agency determination or FCIC interpretation should have been sought." 7 C.F.R. § 400.766(b)(4).

the policy was subject to interpretation, but the interpretation dispute instead arose after the arbitration proceedings. We emphasize that we "accord an extraordinary level of deference" to the arbitrator's decision. *SBC Advanced Sols.*, 794 F.3d at 1027 (internal quotation marks omitted). The arbitrator thus did not exceed his authority by denying Balvin's claim based on the appraised value of his crops.

The arbitrator's findings also support denial of Balvin's claim on a different ground—that he abandoned his crop—despite Balvin's argument to the contrary in his cross appeal. "To receive any indemnity," Balvin's policy requires "[t]hat the loss was caused by one or more of the insured causes." His policy provided coverage for "unavoidable, naturally occurring events" and did not provide coverage for "[a]ll other causes of loss." The arbitrator found that "[f]or unexplained reasons, [Balvin] abandoned his . . . crop by failing to harvest the crop in a timely manner," a cause of loss not covered under the policy. The arbitrator noted that Balvin's neighbor was able to harvest his entire crop and that no other farmer in Balvin's county submitted a claim for loss because they were not able to harvest their crops due to excess moisture.

Balvin responds that the arbitrator could not properly make an abandonment finding because such a finding involved a "good farming practices" determination.[2] The crop insurance policy defines "abandon" to include the "failure to harvest in a timely manner." According to Balvin, an FCIC manual states that failure to timely harvest cannot be considered abandonment unless the crop is in a condition where "harvest would be considered as a good farming practice." Balvin thus claims that the arbitrator's abandonment finding necessarily involved a good farming practices

---

[2]It is less than clear that the arbitrator in fact made a good farming practices determination. An RMA and FCIC handbook lists "What Does Not Qualify for GFP [good farming practices] Determination," which includes "identifying or determining that an insured cause of loss was present." U.S. Dep't of Agric., FCIC 14060-1, *Good Farming Practice Determination Standards Handbook* 11-12 (2018). For the purposes of this appeal, we assume the arbitrator made a good farming practices determination.

determination. He additionally notes that the policy allows arbitration of disputes about decisions Rain and Hail makes, but it excepts those decisions with respect to good farming practices. Instead, the policy provides Balvin the right to request a determination from the FCIC if he disagrees with Rain and Hail's good farming practices determination.

Balvin argues that the arbitrator did not have the authority to make a good farming practices determination in the first instance under the terms of the policy because Rain and Hail should have made the determination first, thereby giving Balvin the option to appeal the determination to the FCIC. He urges us to vacate the arbitration award on this ground. [3] Although the policy provides that Rain and Hail initially would make any good farming practices determinations, it does not expressly prohibit the arbitrator from making a good farming practices determination for the first time in the event the need arises during an arbitration proceeding. *See CenterPoint Energy Res. Corp. v. Gas Workers Union, Local No. 340*, 920 F.3d 1163, 1167 (8th Cir. 2019) ("The arbitrator's disregard of the contract must be clear: that an opinion includes an ambiguity that permits the inference that the arbitrator may have exceeded his authority is not a reason for refusing to enforce the award." (internal quotation marks omitted)).

While the fact that the arbitrator made the good farming practices determination in this case may be unusual given that the policy contemplates that Rain and Hail would make such a determination, that does not necessarily mean the

---

[3]At times in his briefs Balvin appears to raise arguments about which sections of an FCIC manual the arbitrator should have applied. The district court did not address these arguments, and it is not clear they were raised before the district court. *See Local 2, Int'l Bhd. Of Elec. Workers, AFL-CIO v. Anderson Underground Constr., Inc.*, 907 F.2d 74, 76 (8th Cir. 1990) (declining to consider a challenge to an arbitration award that was raised "for the first time on appeal"). To the extent the arbitrator applied the wrong sections of the manual, "[t]he parties bargained for the arbitrator's decision; if the arbitrator got it wrong, then that was part of the bargain." *Beumer Corp.*, 899 F.3d at 566.

arbitrator exceeded his powers. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Great Am. Ins. Co. v. Russell*, 914 F.3d 1147, 1150 (8th Cir. 2019) (alteration in original).

But even if the arbitrator did exceed his powers by making a good farming practices determination, the error is harmless because he did not exceed his powers in denying Balvin's claim based on the appraised value of Balvin's crop. *See* 9 U.S.C. § 10(a) (providing that courts "*may*" vacate an arbitration award where the arbitrator exceeded his powers (emphasis added)); *cf. Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) ("Arbitrators act beyond their authority if they fail to adhere to a valid, enforceable choice of law clause agreed upon by the parties. If such error is harmless, however, it is not grounds for vacatur." (citation omitted)); *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005) ("[T]he arbitrator's error was harmless, since he would have arrived at the conclusion he reached here, even absent the discussion of the aberrant language."). In other words, the abandonment finding was not necessary to the arbitrator's denial of Balvin's claim.

For the foregoing reasons, we reverse in part, affirm in part, and remand to the district court to enter an order confirming the arbitration award.

_____