[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 18-12907; 18-14366
Non-Argument Calendar

_____

D.C. Docket No. 0:15-cv-62688-BB

FLORIDIANS FOR SOLAR CHOICE, INC.,
a Florida not for profit corporation,

Plaintiff - Appellee,

SOUTHERN ALLIANCE FOR CLEAN ENERGY, INC.,

Claimant - Appellee,

versus

ANGELO PAPARELLA,
individually,

Defendant,

PCI CONSULTANTS, INC.,
a California corporation,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 3, 2020)

Before WILLIAM PRYOR, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

PCI Consultants, Inc. ("PCI") appeals from the district court's orders that confirmed an arbitration award and entered damages in favor of Floridians for Solar Choice, Inc. ("FSC") and Solar Alliance for Clean Energy, Inc. ("SACE") (together, the "Solar Parties"). This dispute arises out of a contract between FSC and PCI for PCI's services to obtain signatures to support the Solar Parties' proposed ballot initiative for a solar energy amendment to the Florida Constitution, and whether the Solar Parties agreed to pay PCI extra for unexpected expenses. Following arbitration, as provided for by the parties' contract and pursuant to the Commercial Rules of the American Arbitration Association ("AAA"), the district court awarded the Solar Parties $2,015,893.78 in damages, interest, costs and fees.

On appeal, PCI argues that: (1) the Solar Parties committed fraud in the arbitration proceedings when they claimed damages of $5.25 per-signature in post-hearing briefing (for a total of $1,271,250 in damages), without acknowledging that they consistently had asked for less than half that in damages; (2) the Solar Parties breached the arbitrator-appointment rule of the AAA -- which requires three arbitrators to hear a case "if the parties are unable to agree upon the number of arbitrators and a claim . . . involves at least $1,000,000 . . . ," AAA Rule L-2(a) -- by originally seeking less than $1,000,000 in damages; and (3) the arbitrator had no

2

power to award attorneys' fees 105 days after the "close of hearing," when the AAA Rules provided that the arbitrator's jurisdiction would terminate 30 days after the "close of hearing."  After careful review, we affirm.

We review the confirmation of arbitration awards and the denial of a motion to vacate under the same standard: findings of fact are reviewed for clear error and legal conclusions are reviewed de novo.  Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010).  "There is a presumption under the [Federal Arbitration Act ("FAA")] that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible."  Johnson v. Directory Assistants, Inc., 797 F.3d 1294, 1299 (11th Cir. 2015) (quotation omitted).  "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law.'"  AIG Baker Sterling Heights, LLC v. Americans Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (quotations omitted).  On a motion to vacate an arbitration award under 9 U.S.C. § 10(a), a court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies."  Wiand v. Schneiderman, 778 F.3d 917, 926 (11th Cir. 2015).

The relevant background, which has been addressed both in district court for the Southern District of Florida and in arbitration proceedings, involves FSC's retention of PCI, a "national leader in obtaining signed petitions for ballot

3

initiatives," to collect signatures to support a proposed solar energy ballot initiative to amend the Florida Constitution.  The parties' dispute centers around their third contract, dated June 5, 2015, which later underwent several amendments, increasing PCI's signature collection rate and per-signature price, and adding travel, housing, and per diem expenses for the signature collectors.  When the prices initially increased, the parties agreed that the Solar Parties would split PCI's new $5.25 price per petition, with FSC paying $2.25 for signatures and SACE paying $3.00 for voter education.  In November 2015, PCI again attempted to raise prices, and the parties' relationship fell apart.  While the Solar Parties maintained that they paid PCI in full under the increased prices they had agreed to -- that is, they paid $1,271,250.00 to PCI ($5.25 per signature times 217,000 signatures plus $132,000 in expenses) -- PCI ultimately withheld 217,000 signed petitions from the Solar Parties due to the Solar Parties' alleged failure to pay an additional $212,479.67 in expenses.

These extra expenses, according to invoices, were not just for the solar energy amendment, but for another ballot initiative concerning medical marijuana.  PCI's principal, Angelo Paparella, admitted in the arbitration proceedings that he was "passionate about" medical marijuana and had a personal relationship with the leaders of that campaign in Florida, but there was conflicting testimony as to whether the Solar Parties had agreed to share expenses with the medical marijuana campaign.

4

FSC's complaint in district court raised several causes of action for breach of contract, fraud in the inducement, conversion, and unjust enrichment against PCI, and fraud in the inducement and conversion against Paparella, alleging, among other things, that the defendants had failed to deliver the signed petitions they had collected and had improperly charged PCI expenses incurred by another client. Moreover, based on its arbitration agreement with PCI, FSC moved the district court to compel arbitration of these claims. The district court granted the motion. SACE, which had similar claims against PCI, was added as respondent in the arbitration proceedings.

In July 2017, after holding a three-day hearing, the arbitrator found for, and rendered judgment to the Solar Parties. The arbitrator found: (1) that Paparella's testimony that the Solar Parties (FSC and SACE) agreed to share expenses with the medical marijuana campaign was "not credible"; (2) that the Solar Parties had paid PCI in full, in accordance with the per-signature price and the expenses agreed to by PCI and the Solar Parties in the June 5 contract, as later modified; and (3) thus, that PCI had breached its contract with the Solar Parties, resulting in $1,271,250 in damages to the Solar Parties. However, the arbitrator found that Parparella was not individually liable to the Solar Parties. In October 2017, the arbitrator also awarded to the Solar Parties $230,218.34 in pre-judgment interest, $18,277 in costs, and $340,000 in attorneys' fees. On June 11, 2018, the district court confirmed the

5

arbitration award and denied PCI's motion to vacate. The district court later determined that FSC and SACE were also entitled to post-award, pre-judgment interest, and entered a corrected final judgment with a final award in the amount of $2,015,893.78 on September 19, 2018. This timely appeal followed.

First, we are unconvinced by PCI's claim that the arbitration award should be vacated based on alleged "fraud" the Solar Parties purportedly committed when their post-hearing brief increased the amount of damages sought. The FAA authorizes a district court to vacate arbitration awards under only four circumstances:

> (1) Where the award was procured by corruption, fraud, or undue means;
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378 (11th Cir. 1988), we applied the fraud exception found in § 10(a)(1), and found that a claimant's expert had committed perjury at an arbitration hearing and vacated the arbitration award. We held in Bonar that in order to vacate an arbitration award under § 10(a) based on fraud, (1) "the movant [must] establish fraud by clear and

6

convincing evidence"; (2) "the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration"; and (3) "the fraud [must have] materially related to an issue in the arbitration." 835 F.2d at 1383. All three prongs must be met. See O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc., 857 F.2d 742, 748 (11th Cir. 1988).

Here, PCI has failed to satisfy the requirements of Bonar, because, among other things, it did not establish that the Solar Parties' committed any fraud, much less by clear and convincing evidence. Essentially, PCI argues that the Solar Parties committed fraud in arbitration by originally representing that it sought damages of only $487,588.50 during the hearing -- the total paid by FSC for the 217,000 petitions at $2.25 per petition, exclusive of expenses and the $3.00 per petition paid by SACE -- and then in post-hearing briefing, arguing that it sought damages for the full $5.25 per-petition price.

We disagree. The Solar Parties' post-hearing requested damages of $1,271,250.00 was supported by the record, which included testimony from PCI itself that the Solar Parties paid PCI $5.25 per petition. While PCI argues that SACE was not damaged because it was paying for education and not signatures -- and thus was not entitled to the additional $3.00 per petition -- the arbitrator found that SACE was damaged, explaining that SACE agreed to pay $3.00 per petition as an additional funding source for the signatures. We can find no error there. PCI also never

established by clear and convincing evidence that FSC intended to deceive PCI or deceived the arbitrator -- the arbitrator himself found no fraud when he denied PCI's motion to set aside the award on these same "fraud" grounds, and the arbitrator, who had a copy of the hearing transcript when he received the post-hearing briefs, was in the best position to decide whether he had been misled in any way.

In any event, PCI has cited no cases holding that a change in damages theory constitutes "fraud" or "undue means" under 9 U.S.C. § 10(a)(1). None of PCI's remaining arguments -- about the district court's failure to define fraud or to make certain findings -- have any merit, especially in light of the district court's limited role in ruling on a motion to vacate an arbitration award under the FAA. See Wiand, 778 F.3d at 926 (noting that a court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies"). As the district court reasoned:

> Defendants fail to meet their burden to demonstrate by clear and convincing evidence that Solar defrauded or used undue means to influence the Arbitrator. Defendants' challenge -- cloaked in the nomenclature of fraud -- amounts to no more than vehement disagreement with the Arbitrator's findings on the breach of contract claim. A change in damages theory, while vexing to Defendants, does not amount to clear and convincing evidence of fraud or undue means.

Floridians for Solar Choice, Inc. v. PCI Consultants, Inc., 314 F. Supp. 3d 1346, 1355 (S.D. Fla. 2018). Thus, because PCI has failed to satisfy Bonar's requirement

that it establish fraud by clear and convincing evidence, we affirm the district court's

denial of PCI's motion to vacate the arbitration award on this ground.[1]

We are also unpersuaded by PCI's claim that it was deprived of its right to a

three-arbitrator panel under the AAA Rule L-2.  Rule L-2(a) says in full:

> Large, complex commercial cases shall be heard and determined by
> either one or three arbitrators, <u>as may be agreed upon by the parties</u>.
> With the exception in paragraph (b) below [involving cases of financial
> hardship inapplicable here], <u>if the parties are unable to agree upon the
> number of arbitrators and a claim or counterclaim involves at least
> $1,000,000</u>, then three arbitrator(s) shall hear and determine the case.
> If the parties are unable to agree on the number of arbitrators and each
> claim and counterclaim is less than $1,000,000, then one arbitrator shall
> hear and determine the case.

---

[1] Because PCI must satisfy all of <u>Bonar</u>'s requirements to prevail on its fraud-in-arbitration theory, we need not address <u>Bonar</u>'s remaining factors.  Nevertheless, we note that PCI has not satisfied <u>Bonar</u>'s second requirement either -- that the alleged fraud was undiscoverable through the exercise of due diligence at arbitration.  As the record reflects, the Solar Parties filed the post-hearing brief that PCI now takes issue with on June 15, 2017, and the AAA served the award on the parties on July 25, 2017, 40 days after the Solar Parties filed their post-hearing brief.  But at no point during this 40-day period did PCI take any action, much less raise its fraud ground or even object to the Solar Parties' post-hearing brief.  Nor did PCI file a motion to re-open the hearing.  <u>See</u> AAA R-40 ("The hearing may be reopened . . . by the direction of the arbitrator upon application of a party, at any time before the award is made.").  Because the alleged fraud PCI now relies on appeared in the Solar Parties' post-hearing brief, the alleged fraud was not only "discoverable," but was actually discovered by PCI when it received the Solar Parties' post-hearing brief.

As for <u>Bonar</u>'s third requirement -- that the alleged fraud materially related to an issue in the arbitration -- it's also not clear that PCI has made this showing.  As the Fifth Circuit has interpreted it, "[w]e read [9 U.S.C. § 10(a)] as requiring a nexus between the alleged fraud and the basis for the panel's decision." <u>Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.</u>, 915 F.2d 1017, 1022 (5th Cir. 1990).  Here, because the Solar Parties' post-hearing brief is the basis for PCI's fraud claim, and because the Solar Parties' post-hearing brief relied on the same exact evidence that had been presented to the arbitrator in arbitration -- and did not cite any new evidence -- it's hard to argue that there was fraud in that brief that caused the arbitrator to award the amount of damages he found.

AAA Rule L-2(a) (emphases added). Thus, under the plain language of AAA Rule L-2(a), the parties may agree to one arbitrator where $1,000,000 or more is in dispute. That is exactly what happened here.

In its AAA Statement of Claim, FSC demanded "$500,000 - $1,000,000" plus punitive damages. Then, when SACE was added as a respondent in February 2017, two months before the final hearing, SACE asserted a counterclaim seeking additional damages. On this record, PCI was put on notice, from the beginning of the case, that if the Solar Parties were to prevail, their award could exceed $1,000,000, but at no point did PCI request a three-arbitrator panel. Rather, as the district court noted, PCI admitted that it stipulated to one arbitrator. See 314 F. Supp. 3d at 1356-57 ("Counsel for Defendants readily concedes that the parties agreed to have this matter heard by one arbitrator."). Indeed, PCI never claimed that it was entitled to three arbitrators until after the July 2017 award, when, on August 11, 2017, FSC moved for attorneys' fees arising out of the arbitration. Under the AAA rules, PCI waived its right to object to one arbitrator. See AAA Rule R-41 ("Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.").[2] Because

---

[2] PCI's reliance on Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830 (11th Cir. 1991), is misplaced. In Szuts, the parties' agreement required a three-arbitrator panel, but only two of the

10

the parties were permitted to -- and did -- agree to one arbitrator under the AAA Rules, we affirm the district court's denial of PCI's motion to vacate on this ground as well.

Finally, we find no merit to PCI's argument that the arbitrator lacked jurisdiction to award FSC attorneys' fees more than 30 days after the hearing closed. As the record reflects, the parties stipulated that all motions for attorneys' fees would be resolved post-hearing, specifically agreeing in the Pretrial Stipulation that: "The Parties agree that recovery of attorney's fees and costs will be reserved for post-trial resolution by the Arbitrator."  By entering into this stipulation, the parties avoided the need for filing motions for fees before the entry of an award, without knowing who prevailed, and if so, whether the claim permitted the recovery of fees.  In fact, PCI did not move for attorneys' fees before the July 2017 award either, demonstrating its shared understanding of the stipulation.

The July 2017 award found that FSC was "entitled to an award of its reasonable attorney fees."  The arbitrator then ruled in its October 2017 order resolving post-hearing motions that: "The Award entered by me on July 20, 2017 was not intended to be a final award.  The determination of prevailing party fees and costs was expressly agreed to be addressed post final hearing, by stipulation of the

---

arbitrators issued the award. Id. at 831-32. Here, in contrast, the parties' agreement was silent on the number of arbitrators, and the parties stipulated to one arbitrator, as the AAA Rules permit.

11

parties. At best, the failure to include an express reservation of jurisdiction was a clerical error that can be and is hereby corrected." We find no error in the arbitrator's decision that, having found that the Solar Parties were entitled to fees, he had the authority, pursuant to the parties' pre-hearing stipulation, to then calculate the amount of fees to be awarded. See, e.g., VFM Leonardo Inc. v. ICE Portal, Inc., No. 14-24709-CIV, 2015 WL 11216727, at *5-6 (S.D. Fla. July 23, 2015) (holding that under § 9 U.S.C. 11(b), "the issue of attorney's fees in particular is considered to have been submitted to arbitration where the arbitrator 'plainly believed' the issue was submitted for his decision") (citing White Springs Agric. Chemicals, Inc. v. Glawson Invt. Corp., 660 F.3d 1277, 1281 (11th Cir. 2011)); Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 331-32 (1st Cir. 2000) (affording deference to arbitrator's interpretation of parties' stipulation which governed timeliness, among other things). Thus, we agree with the district court that "the Arbitrator determined that Solar's motion for attorneys' fees was timely filed pursuant to the parties' stipulation, and [we] will not disturb that ruling," especially since PCI's principal Paparella filed his own motion for attorneys' fees after the July Award. 314 F. Supp. 3d at 1357-58.[3]

---

[3] PCI's reliance on International Brotherhood of Electrical Workers v. Verizon Fla., LLC, 803 F.3d 1241 (11th Cir. 2015), is misplaced. There, we held that an arbitrator was precluded under AAA Labor Arbitration Rule 40 (whose counterpart is AAA Commercial R-50) from redetermining the merits of previously decided claims by issuing a substituted award. 803 F.3d at 1247-51. The court noted that the arbitrator "substantively changed and revised his decision's analysis and ruling entirely." Id. at 1250. No substantive revisions like that occurred here.

As for PCI's claim that the arbitrator did not have the power to issue attorneys' fees after the 30-day deadline because he was without the jurisdiction or authority to do so, we disagree.   We've rejected the idea that an arbitrator acted "outside his authority" simply because of his "the failure to abide by the AAA rules governing the time period for issuance of a decision."   Davis v. Producers Agr. Ins. Co., 762 F.3d 1276, 1286-87 (11th Cir. 2014) (noting that where the non-prevailing party did not object and suffered no prejudice when the arbitrator's decision was issued outside the 30-day period, there was "no basis for overturning the arbitrator's decision"); see also Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81 (2009) (describing "jurisdiction" as a tribunal's "power to hear a case," a matter that "can never be forfeited or waived") (quotation omitted).   Indeed, AAA R-45 provides that an award be made by the arbitrator within 30 calendar days from the date of the closing of the hearing, unless the parties "otherwise agree[]" to the award's due date.   And several of our sister circuits have squarely held the question of whether an arbitrator timely issued an award is not jurisdictional.   See McKesson Corp. v. Local 150 IBT, 969 F.2d 831, 833 (9th Cir. 1992) ("Courts have uniformly held that limitations on the time in which an arbitrator may render an award are procedural not jurisdictional.") (citing cases from the Second, Seventh and Federal Circuits); see also Aluminum Bricks & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d

13

1545, 1550 (11th Cir. 1993) (stating that "procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator") (quotation omitted)). As a matter that can be waived, forfeited or contracted around, the 30-day deadline is not jurisdictional, and the arbitrator did not exceed his authority in awarding attorneys' fees outside of the 30-day period.

Accordingly, we conclude that the district court did not err in denying PCI's motion to vacate the arbitration award, and we affirm.

**AFFIRMED.**