[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11420
Non-Argument Calendar

_____

D.C. Docket No. 1:20-cv-20059-RNS

GERARDO JOSE GUARINO,

Plaintiff - Appellant,

versus

PRODUCTOS ROCHE S.A.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2020)

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Productos Roche S.A. (Roche) initiated an action against Iutum Services Corp. (Iutum) and Gerardo Guarino, seeking confirmation of an international arbitration award.  The district court confirmed the award pursuant to 9 U.S.C. § 207.  Guarino appeals the district court's confirmation of the award against him individually.  Guarino asserts the district court's confirmation of the award should be reversed because (1) the agreement to arbitrate was not in writing, (2) he did not receive sufficient notice of the arbitration, and (3) recognition of the arbitral award is contrary to public policy of the United States.  No reversible error has been shown, and we affirm.

## I.  BACKGROUND

Roche, a Venezuelan company, and Iutum, a now-dissolved Florida corporation, entered into a June 17, 2015 purchase agreement in which Roche agreed to purchase pieces of electronic equipment from Iutum.  Guarino, a director of Iutum, signed the purchase agreement on behalf of Iutum.  This purchase agreement contained a conflict-resolution clause that provided any conflicts be resolved by arbitration in Venezuela and in accordance with Venezuelan law.  As relevant here, the conflict-resolution clause states:

> The parties will attempt to resolve among themselves, any controversy or claim that arises from the execution, interpretation or breach of the Agreement.  To this end, either party will notify the other party by means of a reasoned document, about the controversial matter, claim, interpretation or alleged breach.  Once the notification has been received, the parties will have a period of thirty (30) calendar days to

2

resolve the matter raised.  If the amicable solution of the controversy is not reached within the previously mentioned period, or any of its extensions agreed by mutual agreement between the parties, if any, the dispute will be submitted to institutional arbitration by any of them.  The arbitration shall be conducted in the Spanish language, in the city of Caracas and in accordance with Venezuelan law, in accordance with the provisions contained in the General Law of the Arbitration Center of the Caracas Chamber that is in force. . . .

Roche claimed that after it paid Iutum in full for 257 pieces of electronic equipment, Iutum delivered only 138 pieces of electronic equipment and began evading contact with Roche.  Pursuant to the conflict-resolution clause contained in the purchase agreement, Roche commenced an arbitration proceeding before the Arbitration Center of the Caracas Chamber (ACCC) on August 21, 2017.  The arbitration proceeding was commenced against both Iutum and Guarino in his personal capacity.

The ACCC determined that it was not possible to notify Iutum and Guarino by express mail.  Thus, in accordance with article 45 of the Rules of the ACCC, the ACCC determined that notification by publication in a Venezuelan journal was a proper method of notice of the request for arbitration, and Roche provided notice to Iutum and Guarino in a local circulation newspaper in Venezuela.  Guarino did not see the notice in the Venezuelan newspaper from his home in Florida and represents that he had no knowledge of the arbitration proceeding.

Three arbitrators were appointed on April 10, 2018.  Subsequently, the ACCC notified Iutum and Guarino by certified mail of certain actions in the

3

arbitration, and the ACCC recorded confirmation receipt of certified mail or DHL courier of all notifications. Neither Iutum nor Guarino participated in the arbitration, and the arbitrators entered a default against them. The arbitrators rendered a final opinion on November 7, 2018, and found Iutum and Guarino jointly and severally liable for a payment of $176,785.95. The ACCC also found Iutum and Guarino jointly and severally liable for $53,035.79 for procedural costs and attorney's fees. Iutum and Guarino failed to pay Roche the amount owed from the arbitration award, so Roche filed a petition in the Southern District of Florida to confirm and enforce the award. The district court granted Roche's petition.

## II. DISCUSSION

We review a district court's confirmation of an arbitral award *de novo*, and the district court's factual findings for clear error only. *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011). Both parties agree that the arbitration is governed by the Inter-American Convention on International Commercial Arbitration (Inter-American Convention), Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245 (effective for the United States on June 9, 1978). *See* 9 U.S.C. §§ 301-307 (providing for enforcement of the Inter-American Convention in the United States). With respect to enforcement matters and interpretation, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), June 10, 1958, 21 U.S.T. 2517,

4

T.A.Z.S. No. 6997, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970), and the Inter-American Convention are substantially identical, and the case law interpreting provisions of the New York Convention is largely applicable to the Inter-American Convention. *See Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 105 & n.9 (2d Cir. 2016). A party to an arbitral award falling under the Inter-American Convention may apply to the district court having jurisdiction for an order confirming the award, and "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [Inter-American] Convention." 9 U.S.C. §§ 207, 302.

A. *In-Writing Requirement*

Guarino's first issue on appeal is whether the district court's order confirming the award "should be reversed because in applying Venezuelan law the Order violated . . . [the requirement the agreement be in writing] insofar as [Guarino] did not sign an agreement to arbitrate with . . . Roche in his personal capacity, nor do any of the recognized exceptions apply in this case to bind a non-signatory to an arbitration agreement."[1] Guarino contends he signed the agreement

---

[1] As an initial matter, in his briefing, Guarino almost exclusively cites the New York Convention rather than the Inter-American Convention, even though both parties agree the Inter-American Convention applies. Both Venezuela and the United States are signatories to the Inter-American Convention and the New York Convention. Article V of the Inter-American Convention is substantively the same as the New York Convention, and we cite the Inter-American Convention on Issues 2 and 3. We cite the New York Convention on Issue 1, because

on behalf of Iutum, and not in his individual capacity. Thus, it follows that any agreement between Guarino and Roche is not in writing, and therefore cannot meet the in-writing requirement.

Article IV of the New York Convention states the following:

> 1.  To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:
> *(a)* The duly authenticated original award or a duly certified copy thereof;
> *(b)* The original agreement referred to in article II or a duly certified copy thereof.

Article II of the New York Convention provides the following:

> 1.  Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
> 2.  The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letter or telegrams.[2]

---

that argument is based on the New York Convention language that does not have corresponding language in the Inter-American Convention.

[2] Article I of the Inter-American Convention requires that in order to compel arbitration, there must be:

> An agreement in which the parties undertake to submit to arbitral decision any difference that may arise or have arisen between them with respect to a commercial transaction is valid. The agreement shall be set forth in an instrument signed by the parties, or in the form of an exchange of letters, telegrams, or telex communications.

The district court did not err in determining that Guarino was a party to the arbitration agreement and the in-writing requirement was satisfied.[3]  Roche complied with Article II(2)'s requirement to bring the district court the written purchase agreement signed by the parties, which included a conflict-resolution clause.  While it is true that the agreement is between Iutum and Roche, that agreement also provides that any conflicts are to be resolved pursuant to Venezuelan law.  The Venezuelan Commercial Code personally binds those who contract in the name of companies established abroad and are not duly registered in Venezuela.  Venezuelan Commercial Code Art. 357 ("All those who contract in the name of companies established abroad and not duly registered in Venezuela are subject to personal and joint liability for all the obligations contracted in the country . . . .").  The ACCC found that because Guarino had signed the purchase agreement and Iutum was not incorporated in Venezuela, Guarino can be held jointly and severally liable.[4]  Guarino's argument that the agreement did not meet the in-writing requirement is without merit.

---

[3]  The district court did not err in asserting subject-matter jurisdiction to confirm the arbitration award.  *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004).

[4]   Because we agree with the district court that there is an agreement in writing, we need not address Guarino's arguments regarding exceptions to the in-writing requirement.

*B. Notice Requirement*

Next, Guarino asserts the district court's order "should be reversed because the *notice requirement* of the [Inter-American Convention] as well as U.S. due process law were violated when the district court upheld the validity of 'notice' by way of Venezuelan newspaper of local Venezuelan circulation when Mr. Guarino is a U.S. citizen residing and domiciled in Miami, Florida."

> Article V(1)(b) of the Inter-American Convention states the following:
>
> 1.  The recognition and execution of the decision may be refused, at the request of the party against which it is made, only if such party is able to prove to the competent authority of the State in which recognition and execution are requested . . .
> b.  That the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense . . . .

To establish lack of notice as a defense to enforcement of an award, "the party challenging the award must show that the arbitration procedures failed to comport with this country's standards of due process." *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 296 (S.D.N.Y. 2013), *aff'd* 592 F. App'x. 8 (2d Cir. 2014) (citing *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie Due Papier*, 508 F.2d 969, 975 (2d Cir. 1974).

Roche asserts that Iutum and Guarino received notice by mail, email, and publication. The district court found that the ACCC made several efforts to notify Iutum and Guarino and did not clearly err in making this finding. On September

8

26, 2017, the ACCC mailed a notice of arbitration to Iutum at the Iutum's corporate address via DHL. DHL was unable to deliver the package and returned it to sender. On April 30, 2018, the ACCC emailed Procedural Order No. 1 to gerardo.guarino@iutum.com and gerardo@iutum.com informing that notifications regarding arbitration developments would be made by mail. On May 11, 2018, the ACCC again attempted to notify Iutum and Guarino by mail, mailing several documents to the address listed on the purchase agreement via DHL. On May 16, 2018, the ACCC emailed the listed addresses a confirmation that documents were mailed to them via DHL. DHL records reflect that the documents were delivered and signed for by "Galvan" on June 4, 2018. On June 7, 2018, the ACCC emailed both addresses a confirmation that mail was delivered to them on June 4, 2018. On July 3, 2018, the ACCC emailed a notice of hearing to both email addresses informing Guarino that the arbitration hearing would be held at the ACCC on July 16, 2018. On October 18, 2018, the ACCC emailed a notice to both addresses informing Guarino that the arbitration proceedings terminated, and on November 14, 2018, a notice of the award was emailed. There is no evidence that the ACCC received bounce back messages for any of the emails. Roche also published notice of the arbitration in El Nacional, a Venezuelan newspaper, naming both Guarino and Iutum as respondents.

The district court did not err in concluding that Guarino had notice of the proceedings. As an initial matter, when Guarino signed the purchase agreement, he consented to the arbitration being held in Venezuela pursuant to Venezuelan law, and in accordance with the provision contained in the General Law of the ACCC. When the ACCC found that notice by express mail was not possible, it ordered Roche to provide notice of the arbitration proceeding in the national circulation press in accordance with article 45 of the Rules of the ACCC. Guarino consented to this form of notice.

However, in addition to the notice by publication, the ACCC attempted to mail and email Iutum and Guarino multiple times to inform them of the arbitration and acts in the case. Due process requires that notice be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196-97 (11th Cir. 2005) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Successful actual notice is not required; the adverse party need only prove an attempt to provide actual notice. *Id.* at 1197. Roche and the ACCC sent mail notifications to the business address listed on the purchase agreement and the emails were sent to the email addresses Roche had on file. These repeated

attempts to notify Guarino of the arbitration do not violate due process because they were reasonably calculated to notify Guarino of the arbitration proceedings.

## C.  Public Policy

Guarino last asserts the district court's order "violated the *public policy exception* to recognition . . . in recognizing a Venezuelan arbitral award that ascribed personal liability under Venezuelan law to Mr. Guarino for a corporate debt when Mr. Guarino did not agree to arbitrate or guarantee the debt and there was no showing or basis to pierce the corporate veil under Florida law and ascribe liability to the shareholders."

Article V(2)(b) of the Inter-American Convention provides:

> 2.  The recognition and execution of an arbitral decision may also be refused if the competent authority of the State in which the recognition and execution is requested finds . . .
> *(b)* That the recognition or execution of the decision would be contrary to the public policy (*ordre public*) of that State.

"The public-policy defense . . . is very narrow and is likewise to be construed narrowly in light of the presumption favoring enforcement of international arbitral awards." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 496 (11th Cir. 2019) (quotation marks and alteration omitted).  This defense "applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice." *Inversiones y Procesadora Tropical*

11

*INPROTSA, S.A. v. Del Monte Int'l GMBH*, 921 F.3d 1291, 1306 (11th Cir. 2019) (quotation marks omitted).

As discussed above, Guarino is bound under the theory of joint and several liability pursuant to Venezuelan law. Guarino cites Florida case law to argue Venezuelan law is offensive to notions of Florida public policy as it does not comply with Florida's corporate veil-piercing law. However, Guarino signed a purchase agreement that stated it was subject to Venezuelan law on behalf of Iutum. Guarino cannot argue the purchase agreement that explicitly states it is subject to Venezuelan law should now be construed according to Florida law. Guarino being jointly and severally liable does not offend public policy; rather, Guarino's arguments on this issue touch on something the Supreme Court has expressly rejected—that only the law of the United States is adequate to resolve international disputes. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517 n.11 (1974) ("To determine that 'American standards of fairness' . . . must nonetheless govern the controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries."). The enforcement of this arbitration award does not violate public policy.

12

### III.  CONCLUSION

We conclude that the agreement to arbitrate met the in-writing requirement, Guarino received adequate notice, and recognition of the arbitral award does not offend public policy.  Thus, we affirm the district court's confirmation of the arbitral award.

**AFFIRMED.**